SPIES REALTY COMPANY, a South Dakota Corporation, Plaintiff,

v.

STATE DEPARTMENT OF SOCIAL SERVICES, a Subdivision of the State of South Dakota, and the State of South Dakota, Defendants.

No. 13218.

Supreme Court of South Dakota.

Considered on Briefs Jan. 18, 1982.

Decided July 15, 1982.

Paul I. Hinderaker of Austin, Hinderaker & Hackett, Watertown, for plaintiff.

Robert L. Timm, Asst. Atty. Gen., Pierre, for defendants; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

MORGAN, Justice.

Spies Realty Company (Spies) commenced an original action in this court pursuant to SDCL 21–32–10 against the State of South Dakota, requesting $2,735.90 plus interest and costs for rent due under a contract with the South Dakota State Department of Social Services (DSS). A referee was appointed to conduct an evidentiary hearing and submit findings of fact and conclusions of law to the Supreme Court. We now adopt the findings of fact and conclusions of law made by the referee, which awarded Spies its requested relief.

Under two separate agreements, Spies agreed to build and lease office space to DSS in Watertown, South Dakota. In 1968, Spies first remodeled and then leased 4,000 square feet of office space to the Codington County Commission to operate the county welfare system. The design, remodeling and negotiation involved in this lease was controlled by various employees of the DSS.[1] In 1972, Codington County assigned its interest in the lease to the State and the State requested Spies to build an additional 850 square feet of office space. The State leased this addition under a separate agreement until May 15, 1972, at which time the properties were incorporated into a single lease. The 1972 lease was executed by John Madigan for DSS; however, it was never approved by the Office of Administration. This lease was renewed on June 9, 1977, and has not been terminated.

A second lease between Spies and DSS was terminated by the State before its expiration. As with the first lease, the State had approached Spies and requested it to build a 4,000 square foot addition to the property under the original lease at a cost of $119,700.00 in exchange for DSS' intent to lease the building upon completion.

---

1. On that date, the DSS was known as the Department of Public Welfare.

State employees also designed this building, which upon completion was the subject of a February 18, 1975, lease. This lease provided for a ten-year duration, concluding on February 17, 1985. As in 1972, John Madigan executed the agreement for DSS as Deputy Secretary.

In the spring of 1975, DSS was vying with the Bureau of Administration for control of leasing office space outside Pierre. This in-fighting culminated in Governor Kneip issuing a memorandum on May 5, 1977. The memorandum stated, in pertinent part,

> The Commissioner of Administration already has clear and total statutory authority for the lease of space in Pierre. However, that authority outside of Pierre is less clear except in some specified instances. It is our intention to seek to extend the Commissioner's statutory authority outside of Pierre in the future.
>
> Since we have a need for this information now, I am hereby delegating to the Commissioner of Administration the responsibility and authority for final approval in all space leases entered into on behalf of any agency of the executive branch of state government, and I am directing each state agency to cooperate fully with the Commissioner in negotiating any new leases or renewed leases. This policy is effective immediately and shall cover all future leases and those leases currently being negotiated.

The memorandum was never extended to cover preexisting leases, such as the one with Spies. Moreover, the responsibility for locating and negotiating office space, as well as signing and executing the lease, remained with DSS.

John Madigan exercised these duties on behalf of the DSS. Usually, someone in the DSS would negotiate leases and Madigan approved and executed them. Madigan followed this procedure concerning a great many leases throughout the State from 1971 through 1977, during which time he was the only official who executed office leases on behalf of the State for DSS office space. Throughout this period, it was his opinion and the opinion of his legal staff that these leases were valid and enforceable.

SDCL 5–15–27 provides: "The bureau of administration shall also, under the direction of the commissioner of administration, and with the consent of the Governor, arrange for procuring office rooms outside the capitol where necessary." Madigan and his legal staff construed SDCL 5–15–27 as applicable to office space outside the Capitol in the City of Pierre, but inapplicable to office space outside the City of Pierre, as, for example, in Watertown. Moreover, the Commissioner of Administration was aware of DSS' practice of negotiating and executing office space leases. He was also aware that a number of these leases existed throughout the State. At no time, however, did the Bureau of Administration request that existing leases be submitted to it for purposes of approval. Only new or leases being negotiated were requested after May 28, 1975.

Throughout the existence of the instant lease and at the time of the trial, the Governor requested in his annual budget and the legislature approved appropriations for the payment of the lease. The amount of the rental payment appears in the budget prepared by the Bureau of Finance and Management for the Department of Social Services as "various types of contractual services as well as rents." Further, the Bureau of Administration knew of the existence of this lease because the Bureau requested general statistics concerning rent contracts as matter of interest to legislators about their home district.

The State met its obligations under the lease until May 10, 1980, when it moved out of the building and ceased making rent payments. This action was precipitated after the Director of Space Management, Maurice Hurd, determined that DSS was renting unneeded office space in the Watertown area. In his report, he recommended terminating one of the leases with Spies. The State gave notice of termination ninety days before vacating the premises.

Spies Corporation instituted this action as an original proceeding in this court requesting damages representing rent due, plus interest and costs. Circuit Judge Bradshaw, acting as referee for the court, adopted findings of fact and conclusions of law. The issues presented are, first, whether DSS had the authority to enter into the lease and, second, whether the State terminated the lease pursuant to the terms of the lease.

The Secretary of Social Services is responsible for the administrative functions of the DSS, which is charged with the actual disbursement of state and federal welfare monies. SDCL 1–36–7; 1–32–1(12), (13); 28–2–1. These powers expressly include receiving and transferring state and federal monies legislatively appropriated for administrative expenses, including office space, of the program. SDCL 28–2–3. Moreover, even if Bureau of Administration approval under SDCL 15–5–27 is a substantive prerequisite, at the time DSS executed the instant lease this statute was receiving several interpretations by various lawyers. This is further exemplified by the non-retroactive application of the May 5, 1975, memorandum to existing leases, when it was known by the Bureau of Administration and the Bureau of Finance and Management that unapproved leases existed. The referee found that the powers granted DSS implied, if not actually vested, authority in DSS to enter the instant lease agreement. "In addition to [the] powers expressly conferred upon an administrative agency, the agency has such implied powers as are necessarily implied and reasonably necessary to effectuate the express powers granted to, or duties imposed upon, it." *Application of Kohlman*, 263 N.W.2d 674, 678 (S.D.1978). We agree with the referee's conclusion of law that DSS had authority to enter into a lease agreement with Spies on February 17, 1975.

We next consider whether the State terminated its agreement with Spies according to paragraph 15 of the lease agreement. This paragraph states,

It is further expressly understood that in the event of governmental action, either federal, state or local, which terminated programs of the Department of Social Services or otherwise renders it impossible for Lessee to continue to use and occupy the premises as contemplated herein, Lessee shall have the right to terminate this lease by ninety (90) days notice in writing to Lessor of said action, and the nature and consequences thereof.

Without a doubt, the instant lease was terminated because in the opinion of Maurice Hurd the office space was unnecessary for DSS purposes. The State argues that his action is within paragraph 15 because it renders it impossible for lessee to continue to use and occupy the premises as contemplated. Since an appropriation exists for the rental payment, it is difficult to understand how it is impossible for the State to perform its contractual obligations. Moreover, to hold otherwise would result in making the action of an administrative official paramount to the actions of the legislature in appropriating these monies.

Judgment shall be entered in favor of Spies in the amount of $2,735.90 plus interest and costs taxed by the clerk of this court.

All the Justices concur.