Reed, P. J.,
delivered the opinion of the court.
Preliminary to the discussion of the legal questions involved, I may be permitted, briefly, to call attention to some *133 of the peculiar features of the case and facts evincing the intention and motives of the appellant Fifer, from whom the appellant corporation claimed to have acquired title to the propertjr in controversy.
The land taken by him as a homestead for agricultural purposes under the act of congress was, as shown by the evidence, a beaver swamp in the valley of the stream, so much of a bog as to render it almost inaccessible, producing a coarse sedge grass so poor in quality that stock would only eat when forced by hunger; but Fifer testified that a mowing machine might be used on it, were it not for the angles and rocks. The balance of the land was covered with cliffs and rocks. The elevation was so great as to render the land totally unfit for cultivation. It is not shown that during the years it was occupied by Fifer an acre of it was put under cultivation.
Previous to the taking of the land, a portion of one forty acre tract, in connection with other adjoining land, had been taken, and for several years held and occupied as the reservoir site to store water for purposes of irrigation in the valley below. Thirteen thousand dollars had been spent in its improvement, perhaps not very wisely. Although a section of the dam had been carried away by a flood, at the time of his entry over 400 feet of it remained. The irregular shape of the claim taken, and the fact that he called the attention of the officer in the United States land office to the fact of the existence of the dam, and inquired in regard to his legal right to embrace it within his claim limits, shows almost conclusively the intention of the claimant to appropriate the dam, or at least to so control it as to render the remainder and much larger portion unavailable to the owners.
The inequitable character of his claim of title to the property in controversy is shown by the fact that, with full knowledge of the claim of the owners, he looked on from 1889 to 1893, seeing thousands expended in improvements, recognizing the title and possession by accepting employment and receiving payment to the amount of $800, and in assisting *134 the owners to appropriate land he claimed to own, and when over $20,000 had been expended, and the construction practically finished, to take possession by force, and evict the owners, and by holding the outlet as a key to the position, appropriating not only that portion within his boundaries, but confiscating the balance. Such facts fail to appeal favorably to a court of equity, and go far toward estopping appellants .from asserting any claim.
The evidence in regard to the possession previous to August, 1893, is very peculiar and confusing. The evidence of Fifer and several other witnesses for the defense was that after the entry of Fifer, in 1889, he had “ sole and exclusive possession.” Sole and exclusive possession of what? The evidence established the fact that appellant and its grantors had had the actual possession of the property in controversy for many years, and retained it until forcibly dispossessed in August, 1893.
If the evidence was intended to apply to the property in controversy, its falsity was so glaring- as to subject it to severe criticism. If intended to be applied to the adjoining land occupied by Fifer, it was almost equally subject to' criticism, being misleading in character, and in regard to subject-matter where the rights of Fifer and his occupation and possession was conceded, and in regard to property in no way involved in the litigation. If the intention was to show constructive possession by reason of title, thei’e was a misconception of the law of the case. The rule of law is well settled that there can be no constructive possession by virtue of title when there is an actual adverse holding.
The fact is clearly established that appellee and its grantors had the possession of the property in controversy all the time; that in 1890 appellant did work for the company to the amount of $800; in 1892 and 1893 a large force of mechanics, laborers and teams were employed, and the work practically completed early in August of the latter year; that on the 17th of August, Fifer shows, by his own testimony, that he and his associates forcibly dispossessed appellee; and *135 the testimony clearly shows that the possession so taken at that date was the first actual possession of Fifer or his grantees. Fifer, and other witnesses for the defense, in regard to their testimony as to possession, stand upon record in an unenviable light. Justice to them requires that they should apply or explain their testimony.
It is evident the appellee and its grantors had possession' of the locus in controversy from 1882 until August 17,1893.
It is urged first, in the argument of appellant, that appellee and its grantors failed to secure title to the reservoir site and the water, by a failure to apply it to a beneficial use. The constitution requires the application to a beneficial use in order to secure the right for the use of water appropriated. The appropriation or intention to appropriate must of necessity precede the application.
The language of the decisions is that the application to a beneficial use must be made within a reasonable time, and what is a reasonable time must depend upon the facts and circumstances of each particular case.
That the interval from 1882 until 1893 was presumptively too long must be conceded, were the reasons and circumstances unexplained, — and the explanation in this case can hardly be deemed sufficient, — but how can that enure to the benefit of appellants? If, by neglect to apply the water within a proper time, the right to apply was forfeited, the water reverted, and any one could proceed to appropriate and apply it; but such right could only attach while .the right of the former claimant was in abeyance by reason o£ his negligence, and the second party must have availed himself of the right before the reentry and prosecution of the enterprise by the first party. Unless, during the interim, when by failure to prosecute the enterprise the water right may be regarded as having reverted, some party intervenes and makes a valid and legal appropriation of the water, the first party may resume, and if such resumption occurs before intervening rights attach, the right to appropriate is lost.
The question of abandonment by appellee and its grantors, *136 subsequently urged by appellants’ counsel, is so analogous to and intimately connected with the subject under discussion that both may be discussed in this connection. The authorities are agreed that the question is one of intention, and the intention must be deduced from the facts and circumstances of each case. That a party claiming an abandonment must make it a defense upon the trial, has to sustain the burden of proof, and must establish the fact by clear and unequivocal evidence, see Waring v. Crow, 11 Cal. 367; Richardson v. McNulty, 24 Cal. 339. “ Mere lapse of time does not constitute an abandonment, but it may be given in evidence for the purpose of ascertaining the intention of the parties.” Moon v. Rollins, 36 Cal. 333. “ It must appear from the evidence that there was a leaving of the claim, without any intention of returning or making any further use of it.” Bell v. Bed Rock Mining Co., 36 Cal. 214; Smith v. Cushing, 41 Cal. 97; Judson v. Malloy, 40 Cal. 299; Strang v. Ryan, 46 Cal. 33; Raritan W. P. Co. v. Veghte, 6 C. E. Green (N. J.) 463.
Appellant corporation claims the water for the same use as appellee, — to be stored, and, when needed, to be carried below and distributed for irrigating, — and this right is based only upon the common law rights of a riparian proprietor by virtue of the ownership of the land through which the stream passes, _ No right for the use and purposes contemplated can be predicated upon the ownership of the soil, and as appurtenant to or a part of the realty. The common law right, by virtue of the fee in the land, only extends to the use of the water upon the land owned, and the water must be returned to its natural channel, within his boundaries, without serious diminution in quantity, for the benefit of riparian proprietors below. Gould on Waters, sec. 213, et seq.; Angell on Watercourses, secs. 90 to 96; Elliot v. Fitchburg R. R. Co., 10 Cush. 193; Gillett v. Johnson, 30 Conn. 180 ; Ewing v. Colquhoun, 2 App. Cases (Eng.), 839; Sandwich v. Railroad Co., L. R. 10 Ch. Div. 707; Gerwood v. Railroad Co., 83 N. Y. 400.
*137 It will be readily seen that the right to construct reservoirs for the storage of water, to control, transport and dispose of it for irrigation, cannot be based upon the common law right pertaining'to the’ownership of land, and such use, being at variance with and in derogation of the common law of riparian ownership, can onljr be predicated upon special constitutional and statutory provisions permitting such use, and the ownership of the land is no factor, only in so far as it obviates the necessity of the exercise of the law of eminent domain. Hence, it follows that without appropriation of water, construction, and application of water, as provided by the constitution and statutes, which are conditions precedent to the ownership of the use of water, appellants had no claim or legal right whatever.
Both parties claiming the water for distribution or sale at some lower point, how can appellants claim superior title, by reason of appellee’s failure to apply to a beneficial use, where it has not complied with either of the constitutional requirements of appropriation and application that it insists are requisites? No attempt was made to show that appellants had done either. Fifer bought from the government 160 acres of land, ostensibly for and under the law controlling agricultural land, for $200, a small part of which overlapped the improvement of appellee. The claim is that, by the overlapping of the few acres, appellant can take the entire property, completed, without appropriation or application of water, and, with less than $50 expenditure, take the twenty odd thousand dollars expended, the balance of the reservoir site, store water, transport it and dispose of it.
In equity, the facts only need be stated. All appellant got from Fifer was the fee to the few acres used, which appellee could proceed to condemn and take under the law of eminent domain. If appellee failed to proceed and make compensation, appellant, under our statutes, could have proceeded and compelled compensation.
The logic of appellant’s contention seems to be that appellee and its grantors, by failing to prosecute the enterprise *138 with sufficient energy from 1882 to 1890, forfeited its rights, and although no intervening rights of appropriation attached during the existence of such inactivity, a resumption and vigorous prosecution of the enterprise to completion was ineffectual, the theory, in effect, being that, by reason of the former negligence, the title was so lost that all that was necessary to vest the title in another was to lie by and watch, and when completed, take possession by force. Such claims can receive no countenance in a court of equity.
Counsel contends that the grantors of appellee secured no rights by its entry and occupation of a part of the public domain under the act of congress of July 26, 1866, for the reason that the entry was not made until 1882, and says “ the act only acknowledged and confirmed rights existing prior to its passaged ■ •
This construction seems to be in direct conflict with the language of the act, where it is said: .“Provided, however, that whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of ai'y settler upon the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage.” The amendments to the act, made July 9, 1870, and May 10, 1872, are not noticed by counsel. In section 17 of the former act it is provided: “ That none of the rights conferred by sections 5, 8 and 9 of the act to which this act is amendatory shall be abrogated by this act, and the same are hereby extended to all public lands affected by this act; and all patents granted or preemption of homesteads allowed shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the ninth section of the act to which this is amendatory.” The construction of the statute by counsel not only contradicts the act, but is very different from that of the United States courts. In Union M. & M. Co. v. Ferris, 2 Sawyer (U. S. C. C.), 176, it was said: “The act of congress of *139 July 26,1866, is prospective in its operation.” See, also, Broder v. Water Co., 101 U. S. 276 ; Basey v. Gallagher, 20 Wall. 670.
It is urged in argument, by appellants’ counsel, that appellee had failed to comply with the law by not filing with the county clerk and recorder and the state hydraulic engineer a statement of his claim. We can find nothing in the law of congress making such course obligatory, nor is it shown that at that time there was such an officer as state hydraulic engineer. Admitting that a declaratory statement should have been filed, the only object was that of notice, and where, as in this case, actual notice by observation of the premises was admitted, no claim of ignorance or surprise could be made, and no record notice was necessary. The extent and nature of the appropriation was obvious. Vested rights in the land, under the act of 1866 and amendments, had attached to the land previous to his entry, and he took the land subject to existing rights and conditions, and with full knowledge.
Counsel urges the hardship and great wrong inflicted upon appellant Fifer by being dispossessed of land upon which he has resided for years, and the improvements made by him. Only a small portion of the 160 acres is involved, and the only improvements upon it appear to have been a fence upon the line crossing the dam of appellee. It is not shown that he ever attempted any cultivation, or that there was any part of the land susceptible of any cultivation. The cabin into which he moved at the time of his entry, and afterwards occupied, had been previously built by some one else, and repairs of it, with the exception of some fence, not making an inclosure, is all the improvement ever shown to have been made by him.
In his zeal for his client, Fifer, and in urging the great wrong perpetrated by dispossessing him of his home, which he had occupied for years, counsel overlooks two important facts established by Fifer’s testimony: 1. That his former possession was desultory; that he was absent for a year at *140 one time, and that some other .party had the possession and occupied the cabin. 2. That .on the 17th of June, 1893, he had sold and conveyed the property to his codefendant, The Beaver Brook Company, and that from and after that date he had no interest whatever,.and only acted as' the agent of the grantee.
Illustrated by subsequent facts, the motive in making the entry upon the land and the inequitable character of the claim of Filer and his grantee are apparent; and appellant corporation, intending to use the property for the same purpose as appellee, — for the storage, transportation and distribution of water, — must show compliance with the constitution and laws of the state, and cannot base a right upon the alleged shortcomings of appellee.
■ The trial court -was justified in its finding and decree of perpetual injunction, and the judgment and deeree will be affirmed.

Affirmed.