## No. 27952

**Colorado Ground Water Commission and Clarence J. Kuiper, State Engineer for the State of Colorado and Hobart.Hallock v. A. F. Dreiling, a/k/a Anton F. Dreiling, and Nesoline Dreiling, and William Joseph Leiker**

(606 P.2d 836)

Decided December 3, 1979. Opinion modified and as modified petitions for rehearing denied January 21, 1980. Opinion further modified and as modified petition for rehearing denied February 19, 1980.

J. D. McFarlane, Attorney General, Gregory J. Hobbs, Assistant, Ben L. Wright, Jr., Special Assistant, Loren L. Swick, Special Assistant, for plaintiffs-appellants.

Saunders, Snyder, Ross & Dickson, P.C., W. B. Tourtillott, Jr., for third party plaintiff and appellant.

562

Johnson, McLachlan & DiCola, George McLachlan for defendant-appellee.

Carl M. Shinn, for third party defendant and appellee.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

The Colorado Ground Water Commission (the Commission) and Hobart Hallock (Hallock), plaintiffs in the trial court, have appealed a judgment denying their claims to enjoin the operation of two wells located in the North High Plains Designated Ground Water Basin, and denying Hallock's claim for damages resulting from the operation of the wells. The wells are presently owned by defendant William Joseph Leiker (Leiker) and were formerly owned by defendant A. F. Dreiling (Dreiling). We reverse and remand for further proceedings in accordance with the directions contained in this opinion.

On January 11, 1968, Hallock received Commission approval for an irrigation well (priority number 2070) with an annual appropriation of 320 acre feet, which was subsequently increased to 800 acre feet. Two weeks later, January 25, 1968, Dreiling received approval from the Commission to place two wells (priority numbers 2078 and 2079) on land adjacent to Hallock's. The permits specified that neither of the wells was to be located within one-half mile of Hallock's well.

On April 8, 1969, the Commission notified Dreiling by certified mail that one of his wells had been located and drilled within 1,500 feet of the Hallock well, in violation of a condition imposed by the well permits. The Commission conducted a hearing and found that the well was not drilled in compliance with the permit, because it was situated less than one-half mile from the Hallock well. The commission ordered the well plugged and abandoned. (Hereafter referred to as the "illegal well.") Dreiling did not appear at the hearing and did not appeal the Commission's order.

In response to the Commission's order, Dreiling removed the pump from the illegal well but did not plug it as required by the order. With the exception of one brief period, however, he discontinued further pumping from the illegal well.

In the spring of 1974, defendant Leiker purchased Dreiling's land containing the two wells, and commenced irrigation of the farm with both wells. Before he acquired the land, Leiker had retained an attorney to inquire into the status of Dreiling's wells. The attorney contacted the

Division of Water Resources but mistakenly described the location of the wells as being in Township 30 rather than Township 20. That mistake apparently caused a Division representative to look to the priority list, which included the two wells, rather than the Commission files. The priority list did not reflect the plug and abandon order and, consequently, the Division representative informed Leiker's attorney that both wells were on the priority list and appeared to be in good standing.

Upon taking possession of Dreiling's land, but prior to completing its purchase, Leiker replaced the pump on the illegal well and began pumping operations. Immediately thereafter, Hallock notified Leiker that the well had been ordered plugged and abandoned, and requested that Leiker stop using that well. After consultation with counsel, Leiker declined and continued to irrigate with both wells. Hallock, subsequently made a complaint to the Commission.

The Commission filed suit against Dreiling, requesting that the trial court enjoin the use of the illegal well. Because Leiker was in the process of purchasing Dreiling's land he intervened as a co-defendant. Hallock subsequently joined the action as a co-plaintiff and requested damages. Prior to trial, the complaint was amended to include a request for an injunction on the use of Leiker's legal well as well as the illegal well.

After a lengthy hearing, the trial court found for the defendants. The trial court first held that the Commission was estopped from enjoining the illegal well because it had mistakenly informed Leiker that the well was in good standing. The court also held that Hallock was barred from seeking to enjoin the illegal well because of laches. Finally, the court concluded that there was no showing by plaintiffs that the operation of Leiker's legal and illegal wells had impaired Hallock's wells or lowered the ground water level.

The conclusions and findings of the trial court on the issues of estoppel and laches are not supported by the record and require reversal. Moreover, for reasons appearing in this opinion, further proceedings are required in regard to the issue of damages and on the injunctive issues relating to impairment of the Hallock well by operation of the the so-called legal well on the Leiker property.

I.

■ We first address the trial court's holding that the Commission was estopped from enjoining the illegal well. While this Court has long recognized equitable estoppel, the doctrine has only been applied against government agencies when it was necessary to prevent manifest injustice. *Denver v. Stackhouse,* 135 Colo. 289, 310 P.2d 296 (1957); *Piz v. Housing Authority,* 132 Colo. 457, 289 P.2d 905 (1955). It has never been invoked in cases such as this where significant third party rights would be detrimentally affected.

■ Assuming that estoppel was a bar against the Commission, the party asserting estoppel would be required to show a change of position in reasonable reliance on the Commission's action. *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976). No evidence in the record supports a claim of reasonable reliance. Leiker claims that he relied on the Commission's statement that both wells on Dreiling's property were on the priority list and were in good standing. As the Commission points out, however, it was Leiker's attorney who mistakenly described the wells as being located in Township 30 rather than Township 20. The Commission's representative testified that but for the mistake in description, the Commission files would have been checked and the illegal well's proper status ascertained. Moreover, the record shows that Leiker was informed by Hallock of the Commission's order to abandon the well prior to his purchase of Dreiling's land. Once notified of the well's illegal status, Leiker may not reasonably claim reliance. The trial court erred in the application of the doctrine of equitable estoppel.

## II.

The trial court also held that plaintiff Hallock was barred from enjoining the illegal well because of laches. We disagree.

■ Laches may be invoked by a court to bar relief where a party seeks equitable relief and his unconscionable delay in enforcing his rights has prejudiced the party against whom the claim is asserted. *Western Motor Rebuilders, Inc. v. Carlson,* 138 Colo. 404, 335 P.2d 272 (1959). Here we can find no instance in which Hallock slept on his rights or failed to promptly enforce a claim for relief. When Dreiling first started pumping the well in 1968, Hallock complained that it was detrimentally affecting his well. That complaint resulted in the Commission's order to plug and abandon the well. Thereafter, in 1971, Hallock observed an attempt by Dreiling to operate the well and again he registered a complaint. By the time an investigator arrived to inspect the well, the pump had been removed, and no further action was taken. Finally, when Hallock discovered that Leiker intended to pump the illegal well, he immediately informed him of the Commission's order to plug the well. When Leiker refused to abandon the well, Hallock complained to the State Engineer's office which caused this action to be commenced. In every instance Hallock took prompt action to protect his rights. The trial court's finding is not supported by the record and was reversible error. Laches was not a bar to Hallock's claim for injunctive relief.

## III.

■ The trial court finally held that the plaintiffs did not show that Leiker's legal and illegal wells were responsible for lowering the ground water levels in that vicinity. Because of our holdings in Parts I and II, we make no determination on this issue. Instead, we remand this case for further proceedings on the commission's and Hallock's claim that the

operation of Leiker's legal well alone would unduly interfere with Hallock's senior rights.

■ In *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978), we said:

"The General Assembly rejected the pure appropriation doctrine as to ground water. It declared that while the appropriation doctrine should be recognized, it must be modified to permit the 'full economic development of the designated ground water resources.'"

Under the appropriation doctrine as applied to waters of a natural stream, a person is entitled to appropriate water so long as there is any water in the stream. *See Thomas v. Guiraud,* 6 Colo. 530 (1883). When applied to designated ground waters, however, that doctrine is modified to allow only appropriation to the point of reasonable depletion as set forth by the Commission.

"It is declared that the traditional policy of the state of Colorado, requiring the water resources of this state to be devoted to beneficial use in reasonable amounts through appropriation, is affirmed with respect to the designated ground waters of this state, as said waters are defined in section 37-90-103 (6). While the doctrine of prior appropriation is recognized, such doctrine should be modified to permit the full economic development of designated ground water resources. Prior appropriations of ground water should be protected and reasonable ground water pumping levels maintained, but not to include the maintenance of historical water levels. All designated ground waters in this state are therefore declared to be subject to appropriation in the manner defined in this article."

The Act states that "priority of claims for the appropriation of designated ground water shall be determined by the doctrine of prior appropriation." Section 37-90-109, C.R.S. 1973. In addition, the Act empowers the Commission to prescribe acceptable rates of depletion for the aquifer of any designated basin. Section 37-90-111(2), C.R.S. 1973. The Colorado Ground Water Commission is also empowered:

"To supervise and control the exercise and administration of all rights acquired to the use of designated ground water. In the exercise of this power it may, by summary order, prohibit or limit withdrawal of water from any well during any period that it determines that such withdrawal of water from said well would cause unreasonable injury to prior appropriators; except that nothing in this article shall be construed as entitling any prior designated ground water appropriator to the maintenance of the historic water level or any other level below which water still can be economically extracted when the total economic pattern of the particular designated ground water basin is considered; and further except that no such order shall take effect until six months after its entry."

Section 37-90-111(1)(a), C.R.S. 1973.

■ Prior to this case, we have not specifically held that the modified doctrine of prior appropriation permits junior rights in a designated ground water basin to be enjoined when they interfere with the senior appropriation rights. Because the trial court made no finding on this question, we decline to do so now. Instead, we remand this case for further proceedings to determine whether the modified doctrine of prior appropriation should be applied to determine whether the operation of Leiker's legal well has unlawfully interfered with Hallock's senior right to his allotted share of water in the designated ground water basin.

Accordingly, the judgment is reversed. The case is remanded to the district court for retrial of the injunctive and damage issues and the court is directed to make appropriate referral to the Colorado Ground Water Commission, pursuant to section 37-90-111(1)(a), C.R.S. 1973.

JUSTICE GROVES concurs in the opinion as modified.

JUSTICE LOHR does not participate.