**In re CANCELLATION OF the STABIO DITCH WATER RIGHT ON SPEARFISH CREEK.**

**No. 15600.**

Supreme Court of South Dakota.

Dec. 23, 1987.

Allen L. Scovel of Scovel Law Office, Rapid City, for appellants Eugene and Karol Johnson; Stan H. Anker of Anker Law Office, Rapid City, on brief.

Daniel J. Doyle, Asst. Atty. Gen., Pierre, for appellee Water Management Bd.; Roger Tellinghuisen, Atty. Gen., Pierre, on brief.

HERTZ, Circuit Judge.

This is an appeal by Eugene and Karol Johnson (Johnson) from a judgment entered by the circuit court affirming the findings of fact, conclusions of law, and final decision adopted by the Water Management Board (Board), Water Rights Division of the South Dakota Department of Water and Natural Resources. We affirm.

In October 1983 Johnson purchased real property from Stabio. Included in this purchase were eighty-eight (88) acres which had been irrigated under a water right dating back to April 1877. The land in controversy was continuously irrigated from the time the water right was located in 1877 until 1965 when a flood washed out the irrigation system.

In 1962 Stabio leased the land to George Holben. The 1965 flood occurred while George Holben held the lease. George Holben's son, Lester, took over the lease in 1963 and continued on the premises until Johnson purchased the Stabio land in 1983. Lester Holben testified that after the flood in 1965 he and his brother attempted to determine the extent of the repairs necessary to restore the ditch. The headgate and flume were located on adjoining property, however, and access to this property was denied. From 1965 until Johnson's purchase of this property in 1983 no other attempt was made to repair the ditch pursuant to SDCL 46-7-3 or 46-8-1.

It is uncontroverted that there was no irrigation utilizing the Stabio water right between the years 1965 and 1983. Lester Holben testified that during this period there was some irrigation out of a pond situated on the leased property, but this was not related to the Stabio water right.

Prior to Johnson's purchase of the land, Harlan Schmidt, an attorney representing Stabio in the sale of the land, informed Johnson that according to his understanding of the water right law, there no longer was a valid water right because of the nonuse of the right over a period of eighteen (18) years.

Subsequently, Johnson asked his father, Leland Johnson, to ask the Board in Pierre about the status of the water right. Pursuant to this request, Leland Johnson talked with Kevin Larson, an engineer employed with the Board. Leland Johnson informed Kevin Larson that it had been at least two, three or four years since any

water from the ditch had been used, and that access for repairs had been denied. Based on this information, Kevin Larson stated, "that there was nothing in the file to indicate anything, like nonuse or abandonment." Larson testified that "everything that I discussed with the Johnsons was based on the original assumption that it had only been two, three or four years since it had been used." Larson further testified that he "mentioned the statute, SDCL 46-5-37 dealing with nonuse, but they also mentioned the problem with access."

Johnson testified that the question of "the water arose before the purchase because it hadn't been used steadily." He admitted that after attorney Harlan Schmidt advised him that there was no water right, he enlisted his father's assistance in making the inquiry in Pierre. Sometime after the purchase it appears Kevin Larson told Johnson and Tom Venholst, an agricultural engineer for the Soil Conservation Service that, according to the information he had, there was a valid water right on the property.

In the summer of 1984 Johnson purchased irrigation equipment and irrigated from the Stabio ditch. In December 1984 the Board authorized an investigation of the Stabio ditch water right. On January 16, 1985, following this investigation, a notice of cancellation was mailed to Johnson. The Board held a hearing on March 6, 1985 and a rehearing on July 10, 1985. On December 4, 1985, a final hearing was held, where the Board entered its findings of fact, conclusions of law and final decision.

The issues raised by this appeal will be addressed in the order briefed and argued to this court.

## I.

Is a water right forfeited by operation of law under SDCL 46-5-37 for failure to beneficially use the water for three years or longer?

The Board and the circuit court held that SDCL 46-5-37 is self-executing and automatic forfeiture occurred as soon as three years had passed without use of the right.

Johnson claims that forfeiture cannot occur until after a due process hearing pursuant to SDCL 46-5-37.1, and that to hold otherwise would unconstitutionally deny him of a property right.

Before entering upon a discussion of the issue, the pertinent statutes need to be set out in full:

SDCL 46-5-37: **Failure to use beneficially appropriated water—Forfeiture for nonuse—Reversion to public.** When any person entitled to the use of appropriated water fails to use beneficially all or any part of such water for the purpose for which it was appropriated, for a period of three years, such unused water shall revert to the public and shall be regarded as unappropriated public water.

SDCL 46-5-37.1: **Abandonment or forfeiture of permits or rights—Recommendation of chief engineer for cancellation.** Upon the initiative of the chief engineer or upon petition by any interested person and after reasonable notice to the holder of the right or permit, if he can be located, the chief engineer may investigate whether or not a water permit or right has been abandoned or forfeited. After the investigation, the chief engineer may recommend cancellation of the permit or right for reason of abandonment or forfeiture. The recommendation, notice and hearing shall be conducted pursuant to the procedure contained in chapter 46-2A.

After the passage of SDCL 46-5-37.1 the Board adopted a rule denominated as ARSD 74:02:01:40, which states:

After the hearing, the board, by majority vote, shall decide whether the water permit or right is to be cancelled or remain in force. The records of the board shall show the reasons for all cancellations.

The issue of automatic forfeiture is one of first impression in this state. In resolving this issue we examine the statutes set out above to ascertain the intent of the legislature. Thereafter, if necessary, we further consider what other jurisdictions have said about this issue.

█ A statute must be construed according to its manifest intent, and such intent must be derived from the statute as well as other enactments relating to the same subject. *Simpson v. Tobin*, 367 N.W.2d 757 (S.D.1985). Courts must apply the law as the legislature enacted it, and must search for legislative intent as shown by what the legislature said rather than what it should have said or might have said. *State v. Galati*, 365 N.W.2d 575 (S.D.1985).

█ SDCL 46–5–37 in clear language states that failure to use all or any part of a water right for a period of three (3) years results in a reversion to the public of all of such unused water. Standing alone, this statute can be said to be self-executing. The passage of SDCL 46–5–37.1, however, is a clear signal by the legislature that no water right can lawfully be cancelled as a result of claimed forfeiture or abandonment, unless and until a due process hearing has been held. This statute permits cancellation by reason of nonuse only after the chief engineer, upon his own initiative or upon petition by an interested person, concludes an investigation as to whether or not the water right was forfeited because of three or more years of nonuse. After the investigation is completed, SDCL 46–5–37.1 requires that a hearing be conducted with all interested parties given appropriate notice and an opportunity to be heard.

█ The Board asserts that the purpose of the hearing under SDCL 46–5–37.1 is to determine, after notice has been given to all interested parties, whether or not a right "has been forfeited." Having said this, they nevertheless insist forfeiture automatically occurs upon the passage of three years of nonuse of the water right. This clearly represents a contradiction in terms. If forfeiture immediately occurs after three years in accordance with SDCL 46–5–37, what purpose is served by holding a hearing pursuant to SDCL 46–5–37.1? It obviously serves no useful purpose unless the legislature intended that this latter statute modifies the self-executing language in SDCL 46–5–37, and requires that forfeiture not be declared until a hearing demonstrates that it indeed occurred. This

is precisely what has occurred in this case. The Board held three hearings on Johnson's water right claim. All interested persons testified. The Board concluded that forfeiture in fact had been shown; it was then within its power to order cancellation of the Johnson's water right. The fact that the Board and the trial court determined forfeiture was automatic after three years of nonuse is of no consequence to our decision here. The simple fact here is that Johnson's water right was not cancelled until after he had a full opportunity to contest the forfeiture claim. *See Sturgeon v. Brooks*, 73 Wyo. 436, 281 P.2d 675 (1955).

█ The fundamental requisite of due process of law is the opportunity to be heard. The constitutional guarantee of due process of law must be applied to and observed in administrative proceedings involving adversary parties. In the *Matter of the Application of Midwest Security Transfer, Inc.*, 354 N.W.2d 728 (S.D.1984).

█ We hold that there can be no forfeiture of a water right without the due process hearing required by SDCL 46–5–37.1. We further hold that Johnson had a water right up and until the hearing on forfeiture was finalized. This holding is consistent with the spirit and tenor of SDCL 46–5–37 and 46–5–37.1, as well as with the fundamental concepts of due process.

The real question here is whether the Board had the authority to order cancellation when it did. In this connection, it must be remembered that Johnson irrigated out of the Stabio ditch during the summer of 1984. The Board sent Johnson a notice of cancellation on January 16, 1985. Johnson claims that since he used the water in 1984 and prior to the notice of cancellation, the Board was without authority to order cancellation of the water right.

In support of this contention, Johnson cites *Sturgeon v. Brooks, supra*. The Wyoming Supreme Court's opinion contained the following statement taken from an earlier case, *Horse Creek Conservation District v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572 (1939):

We did not in the foregoing case, decide when a proceeding or action of forfeiture may be or must be commenced in order to deprive the owner of his rights, except that we held that if the water not used for a period of five (5) years is, however, used for ten (10) years prior to the action of forfeiture, the action for such forfeiture can no longer be·brought.

It is clear that the Wyoming court made no decision as to when a forfeiture action must be brought. That is the relevant question to be answered in this case. The Wyoming court in *Sturgeon v. Brooks, supra,* simply held that the Board may waive its right to bring a forfeiture action where the user has resumed use for a period of ten (10) years after a period of five (5) years of nonuse.

While counsel for Johnson at oral argument disavowed the Board's claim that he sought revival of his water right by the 1984 irrigation use, it is clear that this was Johnson's intention. The question then, simply put, is whether nonuse of a water right for the statutory period of three (3) years (in this case at least 18 years) results in a forfeiture if the water was used just one year before the cancellation proceedings took place.

*Sturgeon v. Brooks, supra,* in dealing with a special factual scenario, held that, in that case, nonuse for the statutory period followed by ten (10) years of use prior to commencement of an action for forfeiture, constituted a waiver (or estoppel) against the Board in its forfeiture claim. Idaho and Colorado permit revival as long as no junior appropriators have obtained a right to use the water. *Carrington v. Crandall,* 65 Idaho 525, 147 P.2d 1009 (1944); *Beaver Brook Reservoir & Canal Co. v. St. Vrain Reservoir & Fish Co.,* 6 Colo. App. 130, 40 P. 1066 (1895). The state of Montana does not permit revival of a water right but considered this as a new water right rather than a revival of the old one. *O'Shea v. Doty,* 68 Mont. 316, 218 P. 658 (1923).

It is clear that SDCL 46–5–37 and 46–5–37.1 in no way provide or imply that after forfeiture a right may be revived by reinitiating the diversion of water.

■ We are of the opinion that under the circumstances here, the 1984 use by Johnson did not revive his water right after a period of at least eighteen (18) years of nonuse. Stability in this state's water policy requires this conclusion in order to avoid a complete circumvention of the clear import of our water right statutes. Furthermore, after such a long period of disuse, the reinstitution of the use by Johnson at this time could have a serious impact on users who have been diligent in the use of the water during that time.

## II.

Whether estoppel or laches prevents the Board from cancelling Johnson's water right?

Both the Board and the trial court held in the negative. We agree.

■ Johnson claims that Kevin Larson, an engineer with the Department of Water and Natural Resources, Water Rights Division, was clothed with authority to render a binding opinion on the validity of his Stabio ditch water right.

Johnson bases this claim on SDCL 46–2–3.1:

**Delegation of authority to chief engineer—Restrictions.** The water management board may delegate to the chief engineer authority to act on its behalf concerning the quasi-judicial functions of interpreting, applying and enforcing existing rules and laws and ordering action or abatement of action. The board may not delegate any other quasi-judicial functions as defined in 1–32–1, except as otherwise provided by law. The board may not delegate the authority to grant water rights.

Kevin Larson was not the chief engineer at the time he rendered his opinion. Furthermore, even if he had been, the statute does not authorize the chief engineer to give an opinion about the legal validity of a water right. Where this power is properly delegated, the chief engineer can only "in-

terpret," "apply" and "enforce" existing rules and laws.

Kevin Larson's opinion on the validity of Johnson's water right in the Stabio ditch does not create an estoppel in favor of Johnson. A similar situation arose in the case of *Reynolds v. McLean,* 76 N.M. 45, 412 P.2d 1 (1966). There the state asserted that the defendant had lost his right to the water source in question through nonuse. The defendant countered by claiming the state was estopped because the defendant's nonuse resulted from the erroneous opinion given by the state engineer. The New Mexico Supreme Court disagreed and wrote:

> At the very most, the letter from the state engineer is only the expression of an opinion, and the law is well settled that where the facts are equally well known to both parties, the expression of an opinion on a matter of law raises no estoppel.

76 N.M. at 47, 412 P.2d at 3.

Furthermore, Kevin Larson's opinion was based entirely on Johnson's representation, albeit, unintentional, of the facts. First, Johnson never disclosed to Larson that an attorney had informed him that he had no valid water right. The attorney giving this opinion was Stabio's attorney and the attorney that consummated the sale between Stabio and Johnson. Thereafter, instead of employing counsel for the purpose of exploring the validity of the water right, Johnson had his father inquire at the Board office in Pierre, South Dakota. At that time Leland Johnson represented to Larson that the water had not been used for two, three or four years, and that access had been denied. No time frame was ever expressed to Larson. The clear implication was that the period of nonuse occurred in the years just prior to the inquiry, when in fact nonuse had occurred over a period of some eighteen (18) years. Additionally, Leland Johnson indicated that access for the purpose of repairing the ditch had been denied. Again no time frame was expressed to Larson. In fact, there was only one time when access was attempted and that was in 1965. Based on

the misstatement of these facts, and nothing contrary appearing in the Board's files, Kevin Larson advised Johnson he had a valid water right.

■ Even assuming Kevin Larson was clothed with authority to give a legal opinion, which we have held he did not, we can find no estoppel in favor of Johnson. The essential element of equitable estoppel is fraud. There must be some intended deception in the conduct or declaration of the party to be estopped or such gross negligence on his part as to amount to constructive fraud. *Spitzer v. Spitzer,* 84 S.D. 147, 168 N.W.2d 718 (1969). There is no accusation by Johnson of fraud so the question is one of whether Larson's conduct constituted "gross negligence" to amount to constructive fraud. In *Spitzer, supra,* the court found no gross negligence because the party asserting the estoppel was found to have knowledge concerning the facts that was, at the very least, equal to that of the person against whom estoppel was being asserted. Here, Johnson clearly had greater access to the facts than did Larson.

The facts in this case simply do not support any argument of gross negligence. It could well be maintained that Johnson was guilty of gross negligence by misrepresenting the true facts to Larson, and failing to seek his own legal counsel immediately after attorney Harlan Schmidt informed him that, in his opinion, Johnson no longer had a valid water right because of nonuse under the statute.

The case of *Colorado Groundwater Commission v. Dreiling,* 198 Colo. 560, 606 P.2d 836 (1979), is instructive, if not dispositive of the estoppel claim made by Johnson. There the purchaser of the property inquired into the validity of a water right just as Johnson did. Like Johnson, the purchaser mistakenly gave the state agency the wrong facts. In Dreiling, it was an incorrect legal description of the property; here, it was an incorrect statement about how long the water remained unused. Finally, in Dreiling, the agency gave a correct opinion based upon the facts given, but incorrect opinion based on the real facts. The Dreiling court found that

there was no reasonable reliance on the part of the purchaser when he gave incorrect facts to the agency; hence there was no estoppel. Similarly, the Board here concluded that Johnson's reliance on the opinion of Larson was "unreasonable in the light of the facts which existed." While an estoppel against the state or agencies of the state are rare, the Supreme Court of this state recently held that estoppel may be applied against the public "when exceptional circumstances demand their application to prevent manifest injustice." *Moulton, et al. v. State of South Dakota, et al.,* 412 N.W.2d 487 (1987). In this case, however, this court can find no "exceptional circumstances" to justify estoppel.

■■■ The doctrine of laches also has no application to the facts in this case. The reason the Board did not react immediately when it first learned of the 1984 water use was because the Board had been relying on inaccurate information furnished by Johnson. The Board had no reason to suspect this information was incorrect until it received inquiries from other Stabio ditch users. Once these inquiries were made, the Board acted promptly, made an investigation, and brought on a due process hearing. Most, if not all the delay can be ascribed to Johnson.

Accordingly, we hold neither estoppel nor laches is available to Johnson in this case.

### III.

Whether legal excuse existed in justifying the nonuse of the Stabio ditch water right for a period of three (3) years or more?

Both the Board and the trial court held in the negative. We agree.

■■■ Johnson claims legal excuse for the following reasons: (1) denial of access to make repairs in 1965; (2) the lessees were on a year-to-year lease; and (3) the owners of the property were elderly and in poor health and lived out of the state.

No legal authority is cited to support any of these factors as legal excuse. Denial of access to make repairs may be the basis for demonstrating legal excuse, but the proper circumstances are lacking here. After the access denial in 1965 Johnson or his predecessors never attempted to invoke the provision of SDCL 46–7–3, which permits and allows access to make repairs. Nor was there an attempt to utilize SDCL 46–8–1, which authorizes the right of eminent domain in acquiring property for the application of water to beneficial uses. Accordingly, we hold that Johnson has failed to show any legal excuse in the nonuse of the water for some eighteen (18) years.

Since we find no violation of constitutional or statutory provisions; or that the Board and trial court's decision was affected by other error of law; or that the decision is clearly erroneous in light of the entire evidence of the record, we affirm the trial court in all respects. SDCL 1–26–36.

MORGAN and SABERS, JJ., and GERKEN, Circuit Judge, concur.

HENDERSON, J., concurs in result.

HERTZ, Circuit Judge, sitting for WUEST, C.J., disqualified.

GERKEN, Circuit Judge, sitting for MILLER, J., disqualified.

HENDERSON, Justice (concurring in result).

Although I fully agree with this writing and the result, there is but one objection and line of thought to which I cannot subscribe.

Although I agree with the concept that equitable estoppel should not be established in favor of Johnson, I disagree with the statement that "[t]he essential element of equitable estoppel is fraud."

I have written at great length on this subject, in this Court, that is, the subject of equitable estoppel, and academically attempted to delineate various types of estoppel and the ingredients thereof. *See L.R. Foy Constr. v. South Dakota State Cement Plant,* 399 N.W.2d 340, 349 (S.D. 1987) (Henderson, J., concurring in part, concurring in result in part, and specially concurring in part); *Sander v. Wright,* 394

N.W.2d 896 (S.D.1986); *Roseth v. St. Paul Property & Liability Ins.*, 374 N.W.2d 105, 108 (S.D.1985) (Henderson, J., dissenting); *In re Estate of Williams*, 348 N.W.2d 471 (S.D.1984); *Rapid City Area Sch. Dist. v. Black Hills & Western Tours, Inc.*, 303 N.W.2d 811 (S.D.1981). The author's statement is, per my previous writings, too rigid for my beliefs and does not comport, in my opinion, with a concept born in conscience. My application of equitable estoppel is simply more flexible and springy than I have read in some of the writings of this Court. In all other conceptual matters of the majority opinion, it has my general approbation.