**In the Matter of APPLICATION NO. 5189–3 TO EXTEND TIME.**

**No. 17097.**

Supreme Court of South Dakota.

Argued Jan. 8, 1991.

Decided March 27, 1991.

Rehearing Denied April 24, 1991.

---

Harold H. Deering, Jr., Asst. Atty. Gen., Sioux Falls, Roger A. Tellinghuisen, Atty.

Gen., Pierre, on the brief, for plaintiff and appellee Division of Water Rights.

Danny R. Smeins, Britton, for appellant.

Rory King, Siegel, Barnett & Schutz, Aberdeen, for appellee, Isabel Fryer.

WUEST, Justice.

Mr. Gerald Person appeals the judgment of the circuit court, affirming the decision of the Water Management Board to extend the time for construction of an irrigation works under Water Permit No. 4780–3. We affirm in part and reverse in part.

On June 8, 1981, Walter W. Johnson applied for a permit to appropriate water for the irrigation of farmland located in Marshall County, South Dakota. The farmland was owned by Vincent and Isabel Fryer. Mr. Johnson was a long-time tenant on the Fryer farmland pursuant to an oral crop-share lease and was a close personal friend of the Fryers. The application was approved by the Water Management Board (Board) on July 29, 1981, and Water Permit No. 4780–3 was issued with a priority date of June 8, 1981. Pursuant to the permit, construction necessary to put the water to beneficial use was to be completed on or before July 29, 1986, and the water was to be put to beneficial use on or before July 29, 1990.

A dam from which the irrigation water was to be appropriated was constructed and filled with water in the spring of 1982. The dam was built by Teiger Construction Co. in return for gravel from the Fryers' land worth approximately $32,000. Mr. Johnson assisted in the construction of the dam.

In 1982, a dispute arose between Mr. Johnson and the Fryers. The dispute culminated in the Fryers commencing an eviction action against Mr. Johnson in April 1983. A judgment of eviction was entered against Mr. Johnson on July 5, 1983. Mrs. Fryer transferred Water Permit No. 4780–3 into her name, alone, on August 23, 1983.

In the fall of 1982, the Fryers rented their land to Curtis and Richard Foster, the present tenants on the land. The Fosters checked into completing the irrigation project and discussed it with the Fryers. Plans to finish the project were put on hold, however, because Mr. Johnson commenced a lawsuit against the Fryers on August 24, 1983, seeking over $100,000 in damages for lost improvements made during the oral lease.

At the time Mr. Johnson filed his lawsuit, Mr. Fryer was in his early eighties and had, and continued to suffer, serious health problems which ultimately resulted in permanent mental impairment and memory loss. Mr. Fryer was hospitalized with congestive heart failure and suffered psychological stress as a result of the falling-out with Mr. Johnson. Mrs. Fryer was in her mid-seventies.

This second lawsuit was settled in June of 1987. In March 1988, Curtis Foster contacted the Water Rights Division concerning completion of the irrigation project and on March 19, 1988, Mrs. Fryer made application to reinstate Water Permit No. 4780–3. This application was subsequently revised to an application to extend the time for completion of the construction works under Permit No. 4780–3, and was formally filed August 15, 1988.

Mr. Gerald Person intervened in opposition to the extension of time for construction. Mr. Person is a downstream irrigator who has two water permits, one with a priority date of February 23, 1983, and another with priority as of October 24, 1984. Mr. Person's interest in this matter stems from the fact that Mrs. Fryer's water permit retains its original priority date (June 8, 1981) if it is "extended," but loses its priority date if it must be reinstated.[1]

The Board determined that "exigent circumstances" existed under SDCL 46–5–26 and extended the time for construction to July 29, 1989. Mr. Person appealed to circuit court, which affirmed the Board's decision. Mr. Person appeals to this court and

1. "The priority date for the application to rein- state a permit shall be the date the application

raises seven issues.[2] Under our holding, we need address only:

I. Whether the Board lacks jurisdiction to amend a permit to extend the construction period pursuant to SDCL 46–5–26 by an application filed after the expiration of the permit's five-year construction period;

II. Whether the 1983 amendment to SDCL 46–5–26 constitutes an unlawful delegation of legislative authority; and

III. Whether the Board's conclusion of law that "exigent circumstances" existed is supported by the record.

## I.

We set forth in full several pertinent statutes in order to establish a background for our discussion. SDCL 46–2A–8 provides:

Any construction necessary to put the water to beneficial use shall be completed within five years of approval of the permit and the water shall be put to beneficial use within an additional four years. The water management board may, in its discretion, approve any application for a lesser amount of water or may vary the periods of annual use and the permit to appropriate water shall be regarded as limited accordingly.

SDCL 46–5–24 provides:

The plans of construction or place of diversion may be amended, but no amendment may authorize any extension of time for construction beyond five years from the date of the permit, except as provided by this chapter. A change in the proposed point of diversion of water or change of construction plans shall be subject to the procedures contained in chapter 46–2A and may not be allowed to the detriment of the rights of others having valid water permits or rights to the use of the water.

And SDCL 46–5–26 provides:

A permit may be amended by extending the time for the completion of construction, or for application to beneficial use, for a reasonable time, but only on account of delays due to physical or engineering difficulties which could not have been reasonably anticipated, due to operation of law beyond the power of the applicant to avoid, or due to other exigent circumstances identified by the water management board.

It is undisputed that the construction works of the Fryers' irrigation project were not completed within five years or that Mrs. Fryer did not apply for an extension of the construction period prior to the expiration of the original five-year construction period.

Mr. Person contends the Board is without jurisdiction to consider permit amendments to extend the construction period filed after the original five-year period. He asserts two lines of argument: (1) SDCL 46–5–26 does not expressly or impliedly grant the Board authority to consider applications to amend after the five-year period, and (2) Mrs. Fryer's water permit lapsed by operation of law and thus was not an "existing permit" which could be amended. We address these arguments separately.

## A.

The Board clearly has authority to amend water permits. *See, e.g.,* SDCL 46–1–14,[3] SDCL 46–5–30.4,[4] SDCL 46–5–24,

---

**2.** We do not address the following issues raised by Mr. Person: (1) whether the Board may amend Permit No. 4780–3 in that it impairs existing rights of Gerald Person; (2) whether SDCL 46–5–26, as amended in 1983, applies to Permit No. 4780–3; (3) whether the 1983 amendment to SDCL 46–5–26 must be promulgated as an administrative rule and thus may not be enforced by the Board until such a rule-making is completed; and, (4) whether Isabel Fryer's application dated August 15, 1988, was timely filed after expiration of the "exigent circumstances."

**3.** SDCL 46–1–14 provides:

The water management board may issue any permit or license subject to terms, conditions, restrictions, qualifications, quantifications or limitations on perpetuity consistent with this chapter which it considers necessary to protect the public interest and which are related to matters within the jurisdiction of the board. Water rights issued pursuant to this section may be amended by the board

SDCL 46–5–26. The language of SDCL 46–5–26, which authorizes amendments to extend the construction period, is silent as to the timing of such amendments; the statute does not expressly provide for or prohibit the consideration of amendments filed after the five-year construction period. The Board determined that the Legislature intended to broaden the circumstances under which construction extensions could be granted by amending SDCL 46–5–26 to include "exigent circumstances." The Board thus concluded the existence of exigent circumstances could operate to permit consideration of amendments filed after the initial five-year construction period.

 In addition to powers expressly conferred, an agency has such implied powers as are reasonably necessary to effectuate its express powers. *Spies Realty Co. v. State Dept. of Social Services,* 321 N.W.2d 924, 926 (S.D.1982). An agency may exercise some degree of discretion in construing its obligations under a statutory grant of authority. *See In re Application of Kohlman,* 263 N.W.2d 674 (S.D.1978). The Board's interpretation of the "exigent circumstances" provision is consonant with legislative intent and not beyond the scope of its authority. We affirm the Board on this issue.

### B.

 SDCL 46–2A–8.1 provides:

The water management board may reinstate any water permit with a priority date after March 31, 1977, if unappropriated water is available, when construction necessary to put water to beneficial use was not completed pursuant to § 46–2A–8 or § 46–5–26. An application to reinstate a permit may be made without reapplying for a soil-water compatibility permit pursuant to § 46–5–6.2. Any application under this section must be made within three years of the expiration of the original construction period pursuant to chapter 46–2A. The priority date for the application to reinstate a permit shall be the date the application to reinstate is ·filed.

SDCL 46–2A–12 provides:

An amendment of an existing permit or license may be granted for a change in use, a change in point of diversion or other change only if the change does not unlawfully impair existing rights and is for a beneficial use and in the public interest.

Mr. Person argues that once the initial five-year construction period passed without application to extend, Mrs. Fryer's water permit "lapsed" and no longer could be amended as an "existing permit" under SDCL 46–2A–12; the permit could only be reinstated pursuant to SDCL 46–2A–8.1. Under Mr. Person's "lapse" theory, Mrs. Fryer did not lose her water right per se, but rather, lost her priority as against other appropriators. Mr. Person analogizes this situation to the lapse of an Article 9 financing statement by not filing a continuation within five years or the lapse of a collateral real estate mortgage for failure to file an addendum prior to the expiration period. Mr. Person makes a good argument, but we are bound by precedent under the circumstances.

In *In re Cancellation of the Stabio Ditch Water Right,* 417 N.W.2d 391 (S.D. 1987), we examined SDCL 46–5–37[5] and

---

and priority is retained upon amendment. Upon amendment the board may alter terms, conditions, restrictions, qualifications or quantifications consistent with this chapter.

**4.** SDCL 46–5–30.4 provides:

Subject to the limitations in §§ 46–5–33 and 46–5–34 governing changes in irrigation rights from one parcel of land to another, any water permit or right holder may apply for a change of use of the water, a change of location of the use or other amendment to the permit or right. Permits or rights may be amended

pursuant to the procedure contained in chapter 46–2A. Priority shall be retained upon amendment. An amendment of a water permit or right may not increase the rate of diversion or increase the volume of water to be appropriated under the original water permit or right. The amendment may not impair existing rights.

**5.** SDCL 46–5–37 provides:

When any person entitled to the use of appropriated water fails to use beneficially all or any part of such water for the purpose for

SDCL 46–5–37.1 [6] concerning abandonment and forfeiture of water rights. We held that a water right could not be forfeited for nonuse without a due process hearing pursuant to SDCL 46–5–37.1 and that a water right existed until the hearing on forfeiture was finalized. *Stabio Ditch*, 417 N.W.2d at 394. We noted that the constitutional guarantee of due process was applicable to administrative proceedings and that the opportunity to be heard was a fundamental requisite of due process. *Id.*

The circuit court in the instant case, relying on SDCL 46–1–12 [7] and constitutional considerations, found that Mrs. Fryer's permit existed until cancelled with due process. Thus, Mrs. Fryer's permit was effective and could be amended. We do not reach the constitutional question because the Board's own rules require notice and a hearing.

The Board may cancel any water permit or right which is no longer valid. ARSD 74:02:01:36 [8] Failure to construct the necessary works within statutory time limits invalidates a water permit. ARSD 74:02:01:37(1). [9] The procedure for cancelling an invalid permit includes notice, a hearing, and an opportunity to be heard. ARSD 74:02:01:38. [10] After the hearing, the Board must determine whether the water permit is to be cancelled or remain in force. ARSD 74:02:01:40. [11] These rules establish a cancellation system similar to the forfeiture procedure of SDCL 46–5–37.-1. Therefore, the reasoning of *Stabio Ditch* is applicable to this case, and accordingly, Mrs. Fryer's water permit did not lapse by operation of law, but remained in force until cancelled under Board rules. We hold the Board had jurisdiction to amend the construction period for Mrs. Fryer's permit pursuant to SDCL 46–5–26.

## II.

Prior to 1983, the Board had authority, pursuant to SDCL 46–5–26, to extend the time for completion of construction works based only upon delays:

(1) due to physical or engineering difficulties which could not have been reasonably anticipated, or

(2) due to operation of law beyond the power of the applicant to avoid.

which it was appropriated, for a period of three years, such unused water shall revert to the public and shall be regarded as unappropriated public water.

**6.** SDCL 46–5–37.1 provides:

Upon the initiative of the chief engineer or upon petition by any interested person and after reasonable notice to the holder of the right or permit, if he can be located, the chief engineer may investigate whether or not a water permit or right has been abandoned or forfeited. After the investigation, the chief engineer may recommend cancellation of the permit or right for reason of abandonment or forfeiture. The recommendation, notice and hearing shall be conducted pursuant to the procedure contained in chapter 46–2A.

**7.** SDCL 46–1–12 provides:

Any permit or license issued pursuant to this title may be suspended or canceled by order of the water management board after a hearing pursuant to chapter 1–26 whenever the board finds that an individual permittee or licensee, or the agent or employee of either of them as the case may be, has violated any term of the permit or license. The board may suspend the permit or license for a period of up to one year for the first violation; for up to three years for the second violation; and

may cancel the permit or license for a third violation.

**8.** ARSD 74:02:01:36 (Nov. 1988) provided: The board may cancel a water permit or right which has become invalid and file a record of the cancellation in the water permit or right record.

**9.** ARSD 74:02:01:37(1) (Nov. 1988) provided: An invalid water permit or right is a water permit or right which meets the following conditions: (1) The necessary works were not constructed or the water put to beneficial use within the time limits specified in SDCL 46–2A–8[.]

**10.** ARSD 74:02:01:38 (Nov. 1988) provided: If investigation by the chief engineer indicates a water permit or right is invalid pursuant to § 74:02:01:37, the chief engineer shall prepare a recommendation to cancel. If the holder of an invalid permit or right is not known following examination of known records, the chief engineer shall publish a notice of cancellation pursuant to SDCL 46–2A–4(1) to (8), as applicable, and SDCL 1–26–17.

**11.** ARSD 74:02:01:40 (Nov. 1988) provided: After the hearing, the board, by majority vote, shall decide whether the water permit or right is to be cancelled or remain in force. The records of the board shall show the reasons for all cancellations.

In 1983, the Legislature amended SDCL 46-5-26 to include as an additional basis for delay, "other exigent circumstances identified by the [Board]." The Board's and the circuit court's decisions were premised upon the "exigent circumstances" provision only. Mr. Person challenges the 1983 amendment to SDCL 46-5-26 as an unlawful delegation of legislative authority under Article III, section 1 of the South Dakota Constitution. He submits the language "due to other exigent circumstances identified by the water management board" lacks sufficient standards to guide and control the actions of the Board.

■ The Legislature may delegate quasi-legislative power to administrative agencies in order to effectuate legislation. *Oahe Conservancy Subdistrict v. Jank-low*, 308 N.W.2d 559, 563 (S.D.1981); *Boe v. Foss*, 76 S.D. 295, 313, 77 N.W.2d 1, 11 (1956). Such a delegation is valid where there is (1) a clearly expressed legislative will to delegate power, and (2) a sufficient guide or standard to guide the agency. *First Nat'l Bank of Minneapolis v. Kehn Ranch, Inc.*, 394 N.W.2d 709, 718 (S.D. 1986); *Matter of Ackerson, Karlen & Schmitt*, 335 N.W.2d 342, 345 (S.D.1983). Statutes are presumed constitutional and should not be held unconstitutional unless infringement of constitutional restrictions is so plain and palpable as to admit no reasonable doubt. *Oien v. City of Sioux Falls*, 393 N.W.2d 286, 289 (S.D.1986); *Independent Community Bankers Ass'n v. State*, 346 N.W.2d 737, 739 (S.D.1984); *Matter of Certain Territorial Elec. Boundries*, 281 N.W.2d 65, 69 (S.D.1979).

■ In enacting SDCL ch. 46, the Legislature expressly established the general policy of water usage in this state. *See* SDCL 46-1-1 through SDCL 46-1-5. SDCL 46-2A-12 sets forth guidelines for the amendment of water permits generally, and SDCL 46-5-24 establishes guidelines for the amendment of construction plans. SDCL 46-5-26 defines those instances in which the construction period may be extended. As we have previously discussed, the construction period may be extended for delays due to (1) unforeseeable physical or engineering difficulties, (2) operation of law beyond the control of the applicant, or (3) *other* exigent circumstances. Clearly, the phrase "exigent circumstances" is to be interpreted in light of the other predicates enumerated in the statute.

We hold this statutory scheme provides sufficient standards to guide the agency in determining when a water permit may be amended due to exigent circumstances. The fact that the Legislature failed to define "exigent circumstances" is not dispositive. *See Romey v. Landers*, 392 N.W.2d 415 (S.D.1986). The definition adopted by the agency, "extraordinary circumstances not reasonably subject to the control of the person seeking the extension," is consonant with the statutory guidelines of the chapter. There has been no unconstitutional delegation in this case.

III.

■ The Board concluded as a matter of law that exigent circumstances are not only reason to expand the construction period, but may also be reason for failure to file such an amendment within the statutory five-year period. We have affirmed the Board's interpretation in issue I. However, Mr. Person submits the circumstances of the Fryers were not so "exigent" as to delay completion of the project or application to extend the construction period.

As we have previously mentioned, the Board defined "exigent circumstances" to include "extraordinary circumstances not reasonably subject to the control of the person seeking the extension," and noted further that "exigent circumstances normally will include only combinations of difficult situations." The Board concluded that the cumulative impact of the Fryers' ages, the psychological stress of the breakdown of their relationship with Mr. Johnson, the economic stress of Mr. Johnson's lawsuit against the Fryers, and the congestive heart failure of Mr. Fryer constituted exigent circumstances under SDCL 46-5-26. The circuit court found these facts were not clearly erroneous and affirmed the Board. We agree that these factual

findings are not clearly erroneous; however, whether these facts constitute exigent circumstances justifying delay is a mixed law-fact question which we review *de novo*. *In Matter of Groseth Int'l, Inc.*, 442 N.W.2d 229, 232 (S.D.1989); *Permann v. South Dakota Dept. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 115–17 (S.D.1987). "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard[.]" *Permann*, 411 N.W.2d at 118 (*quoting Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982)).

Without addressing whether the circumstances of the Fryers justified delay in construction, we hold their circumstances did not encumber their ability to apply for an extension within the five-year construction period. Notwithstanding advanced age, medical problems, and personal and economic stress, the Fryers prosecuted the eviction of Mr. Johnson, leased their land to the Fosters, and transferred the water permit into Mrs. Fryer's name all well before July 29, 1986, the deadline for completing the construction works. The Fryers were represented by counsel in all legal proceedings. The Fryers and Fosters discussed finishing the irrigation project, but freely and deliberately postponed completion because of Mr. Johnson's 1984 lawsuit for damages. Clearly, the exigent circumstances identified by the Board did not prevent the Fryers from promptly attending to their business affairs. Likewise, these circumstances in no manner prevented or inhibited the Fryers from applying for a construction extension prior to July 29, 1986. The circumstances of the Fryers simply do not justify their failure to file for an extension within the original five-year construction period. Accordingly, their permit may not be amended to extend the time for completion of construction and we reverse the Board and circuit court on this issue.

Affirmed in part and reversed in part.

HENDERSON, J., and HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, concur.

SABERS, J., concurs in result.

MILLER, C.J., concurs in part and dissents in part.

AMUNDSON, J., not having been a member of the court at the time this case was argued, did not participate.

SABERS, Justice (concurring in result).

This is a simple case. It is not complicated. On July 29, 1986, Fryer's *conditional* water permit lapsed. SDCL 46–2A–8; ARSD 74:02:01:37(1). After that date, the Board was barred from doing anything which would impair the existing *perfected* water rights of Person. SDCL 46–2A–12; 46–5–24; 46–5–30.4.

*Stabio Ditch* does not apply to this case. In that case, the appellant possessed perfected water rights dating from 1877. The question was whether these perfected rights could be lost without a hearing because they had been in disuse "for a period of three years" under SDCL 46–5–37. A three-year period defined by *failure* to use a right is inherently ambiguous. Moreover, SDCL 46–5–37.1 explicitly requires a hearing to determine whether abandonment or forfeiture has actually occurred. Under these circumstances, we held that

there can be no forfeiture of a water right without the due process hearing required by SDCL 46–5–37.1. We further hold that [appellant] had a water right up and until the hearing on forfeiture was finalized.

417 N.W.2d at 394.

In contrast, Fryer had unambiguous notice that her conditional water permit would ripen into a perfected right only if she completed construction of the necessary diversion by July 29, 1986 and began beneficially using the water by July 29, 1990. SDCL 46–2A–8. The Board is empowered to extend this period "for a reasonable time" for good reason. SDCL 46–5–26. However, as SDCL 46–2A–8.1 makes clear, Fryer's failure to either complete diversion or apply for a time exten-

sion under SDCL 46–5–26 by the July 29, 1986 deadline limited the Board to *reinstating* her conditional permit with a priority dating only from the application to reinstate. Even the period for applying for this reinstatement expired July 29, 1989. *Id.*

The difference between holding a conditional water permit and owning a perfected water right is like the difference between holding a driver's license and owning a car: just because the latter cannot be seized without due process does not mean the former cannot be allowed to expire according to the terms of the statutory scheme. Because the majority opinion confuses the two situations and incorrectly holds that *Stabio Ditch* controls this case, it is forced to launch into unnecessary discussions of "jurisdiction," "legislative delegation" and "exigent circumstances."

The key to this case is that because *Stabio Ditch* is inapplicable, Person's perfected water rights assumed priority over any rights of Fryer on July 29, 1986. A fair reading of SDCL Title 46 makes it clear that an amendment, whenever made and for whatever reason, cannot impair existing rights. For example, under SDCL 46–5–24, any "change of construction plans ... may not be allowed to the detriment of others having valid water permits or rights to the use of the water." SDCL 46–5–30.4 provides in part:

> An amendment of a water permit or right may not increase the rate of diversion or increase the volume of water to be appropriated under the original water permit or right. The amendment may not impair existing rights.

SDCL 46–2A–12, which is set forth in full in the majority opinion, is to the same effect.

Because Person has existing perfected rights under two valid water permits, an amendment on the part of Fryer cannot impair Person's rights under either permit. Therefore, whether Fryer's circumstances constitute "exigent circumstances" sufficient to justify an amendment is immaterial because no amendment can impair Person's senior rights.

MILLER, Chief Justice (concurring in part and dissenting in part).

I respectfully dissent on Issue III reversing the determination by the Board that exigent circumstances existed.

As the majority holds, the Board's definition of the term "exigent circumstances" was in harmony with legislative intent and within the realm of its authority. The majority goes on to specifically hold that the Board's factual findings supporting its conclusion that exigent circumstances existed are not clearly erroneous BUT then holds that because "mixed law-fact" questions exist, we review de novo. I disagree!

I do not see a "mixed law-fact" question. The facts support the Board's conclusions that "the cumulative impact of the Fryers' ages, the psychological stress of the breakdown of the relationship with Mr. Johnson, the economic stress of Mr. Johnson's lawsuit against the Fryers, and the congestive heart failure of Mr. Fryer constitutes exigent circumstances under SDCL 46–5–26." The trial court and majority have so stated. Where is the mixed question? *Rios v. S.D. Dept. of Social Services,* 420 N.W.2d 757, 759 (S.D.1988); *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113, 118–19 (S.D.1987); *United States v. McConney,* 728 F.2d 1195 (9th Cir.), *cert. denied* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); 2 S. Childress & M. Davis *Standards of Review* § 17.2, at 335–36 (1986).

The majority holds: "their circumstances did not encumber their ability to apply for an extension within the five year construction period"; "the exigent circumstances identified by the Board did not prevent the Fryers from promptly attending to their business affairs"; "these circumstances in no manner prevented or inhibited the Fryers from applying for a construction extension prior to July 29, 1986"; and "the circumstances of the Fryers simply do not justify their failure to file for an extension within the original five year construction period."

I respectfully suggest that the foregoing quotations upon which the majority bases its reversal of the Board and trial court,

are *factual,* not legal, determinations. If the factual findings of the Board are not clearly erroneous (and majority concedes they are not!) we should not make our own factual determinations in an attempt to overrule a result we do not like or agree with. *Matter of State & City Sales Tax Liability,* 437 N.W.2d 209 (S.D.1989); *Sharp v. Sharp,* 422 N.W.2d 443 (S.D. 1988); *Strackbein v. Fall River Cty. Hwy. Dept.,* 416 N.W.2d 270 (S.D.1987); *Bark-dull v. Homestake Min. Co.,* 411 N.W.2d 408 (S.D.1987).