**CENTURY 21 ASSOCIATED REALTY,**
**Plaintiff and Appellee,**

v.

**James L. HOFFMAN, Sr., Defendant,**

**and**

**Isis Company, Inc., a South Dakota Corporation, Defendant and Appellant.**

**No. 17787.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 1992.

Decided July 21, 1993.

A.P. Fuller of Fuller & Tellinghuisen, Lead, Thomas H. Harmon of Tieszen Law Office, Pierre, for plaintiff and appellee.

Thomas E. Adams of Voelker and Adams, Deadwood, for defendant and appellant.

LEE D. ANDERSON, Circuit Judge.

Following a trial to the court, the court entered judgment in favor of Century 21 Associated Realty (Century 21) and against defendant Isis Company, Inc. (Isis). The judgment awarded a real estate commission upon the sale of certain real estate in Deadwood, South Dakota. The defendant, James L. Hoffman, Sr. was dismissed from the lawsuit by the trial court at the conclu-

sion of the trial. Defendant Isis appeals. We affirm.

## FACTS

Isis owned the Fairmont Hotel located in Deadwood, South Dakota. On June 16, 1989, Century 21 entered into a multiple listing sales contract with James L. Hoffman, Sr., as president of Isis whereby Hoffman granted Century 21 the exclusive right to sell the Fairmont Hotel in Deadwood, South Dakota.

The agreement gave Century 21 the exclusive right to sell the property from June 16, 1989, to December 16, 1989 (180 days). Under the terms of the agreement Century 21 agreed to use its best efforts to obtain a purchaser and Isis agreed to pay Century 21 a six percent commission plus sales tax if during the 180 day period the property was sold by Isis, Century 21 or anyone else; or if Isis or any member of the Northern Hills Multiple Listing Service produced a purchaser ready, willing and able to purchase the property. Century 21 was also entitled to a six percent commission plus sales tax if within three months after the exclusive listing expired, a sale was made to any person to whom the property had been shown by Isis or Century 21, or any member of the Northern Hills Multiple Listing Service.

On or about October 6, 1989, Hoffman met with Century 21 agent Don Ostby. The trial court was presented with conflicting testimony as to what was said at that meeting as well as conflicting testimony concerning Century 21's actions that were taken after the meeting to fulfill its obligations under the listing agreement. Hoffman claimed that at this October 6, 1989 meeting he informed Ostby that he wanted to "cancel" the Fairmont Listing Agreement due to Isis' intention to transfer the Fairmont to another corporation in which Hoffman had an interest. Ostby claimed he was told by Hoffman that this other corporation had funds to restore the hotel and that Hoffman wanted to take the Fairmont off the market due to this prospective transfer or merger. Hoffman said Ostby indicated something to the effect that he would take care of it. The merger never occurred.

Ostby testified he never told Hoffman that the listing would be canceled. Ostby testified that he told Hoffman the property would be put on the back burner due to the potential merger. Since Ostby did not consider Hoffman's request as one for cancellation, he never discussed or provided Hoffman with Century 21's specific written form for cancellation. Ostby testified that he continued to show the property, including providing drive by viewings, a walk through, and mailing the multiple listing sheet to people inquiring about commercial property in the Deadwood area, including the ultimate purchaser.

On November 3, 1989, Ron Russo came to Deadwood for the opening weekend of legalized gambling. At the time, Russo was vice president of a real estate management company. After seeing the tremendous amount of activity, he decided to assess the commercial real estate market to see what was available. He contacted Century 21 and met with Don Ostby. According to Russo, he was told there was no commercial property available on Main Street. Russo testified that Ostby never mentioned the Fairmont, but rather Russo found out about the Fairmont on his own when he stopped at the hotel to check bus schedules. Russo also testified that he asked whether the Fairmont was for sale and was told to contact Hoffman who was away on a business trip at the time.

Russo and Hoffman eventually met and negotiated the sale of the Fairmont. On November 30, 1989, Russo signed an option to purchase the Fairmont for $600,000. The sale itself closed on February 20, 1990, within three months of the exclusive listing expiration date. Approximately one month prior to closing, Century 21 president, Ron Island, informed Hoffman that Century 21 expected its sales commission from the Fairmont sale. No commission was paid to Century 21 upon the closing of the sale.

Century 21 brought suit to recover its commission due under the agreement. The defendants answered alleging the affirma-

tive defenses of failure of consideration, release, waiver and estoppel. Prior to Century 21's case-in-chief, the trial court sought to clarify the issues at trial. Isis delineated three issues: failure of consideration, waiver and estoppel.

Following a line of questions during trial, the court ruled that this case did not deal with cancellation of the agreement, that cancellation had not been pled nor had it been proven. Isis did not object to this ruling nor did it request that its answer be amended to include cancellation of the instrument.*

At the conclusion of the trial, the court held that a valid contract existed between Isis and Century 21. The court further held that Isis failed to prove failure of consideration and waiver by a preponderance of the evidence, and failed to prove estoppel by clear and convincing evidence. Century 21 was awarded its commission under the listing agreement.

On appeal, Isis asserts that the trial court erred in ruling that cancellation was not an issue before the court. Isis claims that its answer raised the defense of release, thus cancellation was before the court. Isis further contends that the trial court misapplied the doctrine of estoppel. Isis maintains that Century 21 should have been estopped from claiming that a writing was necessary to establish cancellation of the listing when the form was in its possession and control and was never provided to Isis. Although the statement of issues presented in Isis' brief refers only to cancellation and equitable estoppel, the argument within the brief also includes release and failure of consideration. Therefore, all four issues are addressed on appeal.

### STANDARD OF REVIEW

■ This Court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *Dougherty v. Dougherty,* 482 N.W.2d 320 (S.D.1992); *Jankord v. Jankord,* 368 N.W.2d 571 (S.D.

1985). In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *People in Interest of H.M.,* 474 N.W.2d 267 (S.D. 1991); *Maryhouse, Inc., v. Hamilton,* 473 N.W.2d 472 (S.D.1991). We will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Smith v. Sponheim,* 399 N.W.2d 899 (S.D.1987). Due regard shall be given to the opportunity the trial court had to judge the credibility of witnesses. *State By and Through DOT v. Garvin,* 456 N.W.2d 779 (S.D.1990); *Masek v. Masek,* 228 N.W.2d 334, 336 (S.D.1975).

■ The record reflects that the witnesses' testimony conflicted on several material issues. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Wolff v. Royal Ins. Co. of America,* 472 N.W.2d 233 (S.D.1991); *In Interest of A.D.,* 416 N.W.2d 264 (S.D.1987). Additionally, we recognize all conflicts in the evidence must be resolved in favor of the trial court's findings. *Matter of Estate Gibbs,* 490 N.W.2d 504 (S.D.1992). "Upon review, the evidence and inferences therefrom must be viewed in a light most favorable to uphold the verdict [judgment] and, if there is competent and substantial evidence to support the verdict [judgment], it must be upheld." *Gross v. Conn. Mut. Life Ins. Co.,* 361 N.W.2d 259, 273 (S.D.1985); *Dougherty v. Beckman,* 347 N.W.2d 587, 590 (S.D.1984).

### DECISION

### CANCELLATION

SDCL 15–6–8(c) provides that a party shall set forth affirmatively any matter constituting an avoidance or an affirmative defense. Failure of consideration, release, waiver and estoppel are specifically listed

---

* Appellate counsel Harmon did not participate in the trial court proceedings.

as affirmative defenses under SDCL 15–6–8(c): Although cancellation is not specifically listed, it is clear that cancellation is also a matter constituting an avoidance or affirmative defense.

■ Affirmative defenses must be specifically pled. A defendant has a duty to plead affirmative defenses and failure to do so would result in the defense being barred. *Schecher v. Shakstad Elec. & Mach. Works,* 414 N.W.2d 303 (S.D.1987). There are two exceptions to the general rule that affirmative defenses not pleaded are waived. An affirmative defense is not waived if the pleadings are properly amended to include the defense or if the issue was tried by express or implied consent. *Schecher, supra; American Property Services v. Barringer,* 256 N.W.2d 887, 890 (S.D.1977).

■ Isis did not plead cancellation of an instrument as an affirmative defense. The record does not reflect any attempt by Isis to amend the pleadings to assert cancellation as an affirmative defense. The record does not support any assertion that cancellation was tried by express or implied consent. When questioned by the trial court as to what theories Isis was relying on, defense counsel stated its case relied on the affirmative defenses of failure of consideration, waiver and estoppel. Therefore the trial court was not clearly erroneous in concluding that cancellation was not before the court as an affirmative defense.

### RELEASE

Isis also asserts that the court erred when it held that cancellation was not pled because release was pled and Isis claims that the two are interchangeable. The Restatement, Second, Contracts, § 284, defines release as follows:

(1) A release is a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition.

(2) The release takes effect on delivery ..., and, subject to the occurrence of any condition, discharges the duty.

Comment (a) following this rule states that "Although no particular form is required for an agreement to discharge a duty, the term 'release' has traditionally been reserved for a formal written statement by an obligee that the obligor's duty is discharged." As far as release is concerned, it is clear from the record that no written document that could be construed as a release was ever prepared.

Turning to cancellation we note that SDCL 53–11–6 provides:

The destruction or cancellation of a written contract or of the signatures of the parties liable thereon with intent to extinguish the obligation thereof, extinguishes it as to all the parties consenting to the act.

Restatement, Second, Contracts, § 274 states:

Cancellation, Destruction or Surrender of a Writing

An obligee's cancellation, destruction or surrender to the obligor of a writing of a type customarily accepted as a symbol or as evidence of his right discharges without consideration the obligor's duty if it is done with the manifested intention to discharge it.

Isis points out that written contracts may be canceled not only by a writing but also through other acts of the parties. *See Ford v. Hofer,* 79 S.D. 257, 111 N.W.2d 214, 216 (1961), which held "that a written real estate contract may be rescinded not only by express agreement, but by any course of conduct clearly indicating a mutual assent to the termination or abandonment of the contract. It may consist either of words or acts, and all the circumstances attending the transactions may be shown to prove the intention; but if evidence by acts alone they must be such as leave no doubt as to intention."

■ Cancellation and release are not interchangeable as Isis argues. A release requires a writing of some sort. Cancellation requires either physical destruction of the document evidencing an intent to cancel the same, or conduct or words clearly indicating a *mutual* assent to terminate the

contract. Therefore, the trial court was not in error in ruling that cancellation was not an issue before the court even though release may have been pled as an affirmative defense.

## FAILURE OF CONSIDERATION

■ The listing agreement that Century 21 and Isis entered into was an exclusive right to sell. Under such a contract, the owner of the property is precluded from selling the property during the stated terms without paying the brokerage commission. *Berven Co. v. Newman*, 281 N.W.2d 268, 271 (S.D.1979); *American Property Services v. Barringer, supra.* The consideration for this bilateral contract consisted of Century 21's promise to use its best efforts to sell the property and Isis contracting away its right to sell the Fairmont. *Berven Co. v. Newman, supra.*

■ The trial court found that Century 21 from June 16, 1989 through December 16, 1989 did make reasonable efforts to sell the Fairmont. These efforts included making the listing available to all Northern Hills Multiple Listing Service members, preparing an information data sheet on the listing and showing the property to several interested parties.

The trial court further found that after the October 1989 conversation Ostby continued to show the hotel, including walk through and drive by showings. The trial court also found that Ostby continued to mail the multiple listing sheet to people inquiring about commercial property in Deadwood. Based upon these findings, the court then concluded that the contract was supported by consideration. Inasmuch as there is evidence in the record to support the trial court's findings, the trial court was not clearly erroneous in ruling that Isis failed to prove failure of consideration by a preponderance of the evidence.

## EQUITABLE ESTOPPEL

Finally Isis contends that Century 21 should have been estopped from claiming that a writing was necessary to establish cancellation of its listing contact when the form for the writing was in its possession and control and was never provided to Mr. Hoffman or Isis.

■ In order to constitute equitable estoppel, false representations or concealment of material facts must exist, the party to whom it was made must have been without knowledge of the real facts, the representations or concealment must have been made with the intention that it should be acted upon, and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence. *Heupel v. Imprimis Technology, Inc.*, 473 N.W.2d 464, 466 (S.D.1991); *L.R. Foy Const. v. S.D. State Cement Plant Comm'n.*, 399 N.W.2d 340, 344 (S.D.1987); *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D. 1983).

■ An essential element of equitable estoppel is fraud. There must be some intended deception in the conduct or declaration of the party to be estopped or such gross negligence on his part as to amount to constructive fraud. *In re Cancel. of Stabio Ditch Water Right*, 417 N.W.2d 391 (S.D.1987); *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); *see also, Kraft v. Corson County*, 71 S.D. 382, 24 N.W.2d 643 (1946).

■ The conduct of Century 21 which Isis alleges clearly established the fraudulent element of their affirmative defense of equitable estoppel centers around the October conversation between Hoffman and Ostby. During this conversation, Hoffman indicated that Isis wanted to transfer the Fairmont to another corporation. Due to this proposed transfer, he further indicated that Isis wanted to take the property off the market. In response to this, Ostby indicated something to the effect that he would take care of it. Isis contends that as a result of this conversation Century 21 should have provided Isis with the written cancellation form or should have informed Isis specifically that a commission would be

due in the event of a transfer other than to Hoffman's other corporation.

In his memorandum opinion dated on September 27, 1991, the trial judge ruled that Isis had failed to establish by clear and convincing evidence that Ostby ever intended that Hoffman should understand that the listing agreement was canceled and that Isis was thereafter free to dispose of the Fairmont to whomever it pleased without paying Century 21 its commission. The memorandum opinion was incorporated by reference into the findings of fact and conclusions of law entered by the trial court on November 13, 1991.

The trial court further stated that it was unable to conclude that at anytime after October 6, 1989 Ostby or any other representative of Century 21, as evidenced by either their conduct or words, ever intended that Hoffman should believe that he was free to sell the Fairmont to whomever he pleased without paying a commission. The court then concluded that Century 21 was not guilty of any actual fraud or deceit.

We turn now to the issue of whether the conduct of Century 21's agents amounted to constructive fraud as a result of gross negligence. The trial court found that there was confusion between the parties as a result of the October 6, 1989 conversation. The trial court found that this confusion was initially caused by Hoffman advising Ostby that the Fairmont was to be transferred to another of his corporations. The court further found that the confusion was compounded by Ostby failing to tell Hoffman that a commission would be due to Century 21 if the property was sold during the term of the listing agreement to someone other than through the proposed corporate transfer. The trial court held that Ostby's failure to inform Hoffman that any transfer other than the merger would trigger Century 21's commission was inadvertent, a failure to exercise ordinary care. The trial court further held that confusion and misunderstanding, more so than gross negligence or intentional deception, surrounded the Hoffman–Ostby conversation.

The trial court held that Isis had failed to prove by clear and convincing evidence its affirmative defense of equitable estoppel. After reviewing the record and arguments we do not find that the trial court erred on this issue.

Affirmed.

MILLER, C.J., and WUEST, J., concur.

HENDERSON and SABERS, JJ., concur in result.

LEE D. ANDERSON, Circuit Judge for AMUNDSON, J., disqualified.

HENDERSON, Justice (concurring in result).

Although I concur in this opinion, I wish to refer to my special writings on equitable estoppel, a concept born in conscience. As I have expressed before, my application of equitable estoppel is more springy and flexible than some of the writings in this Court. *See Heupel v. Imprimis Technology, Inc.*, 473 N.W.2d 464, 467 (S.D.1991) (Henderson, J., concurring in result), referring to cases supporting my position; *L.R. Foy Const. v. S.D. State Cement Plant*, 399 N.W.2d 340, 349 (S.D.1987) (Henderson J., concurring in result); *In re Cancel. of Stabio Ditch Water Right*, 417 N.W.2d 391, 397 (S.D.1987) (Henderson, J., concurring in result).

In the anatomy of judge-made law, this Court has assumed a stance, long before Judge Anderson wrote this opinion, which swerved from the original "conscience concept" to a litany of requirements to establish equitable estoppel. I did not swerve. Rainbows have different colors—so does estoppel. There are several kinds with varying gradations. To measure estoppel, you must analyze the factual scenario and its effect upon the litigants. Estoppel was birthed in Equity. In Equity, justice is administered by fairness to men as distinguished from the strictly formulated rules of common law. Equity denotes the spirit and habit of fairness, justness, and right dealing which would regulate the intercourse of men with men. *Gilles v. Department of Human Resources Development,*

**868**

11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110 (1974).

SABERS, Justice (concurring in result).

The majority opinion affirms the trial court's decision awarding a real estate commission of $36,000.00. The facts of this case raise serious questions as to the "claimed efforts" of the Realtor. The "claimed efforts" are far from the "best efforts" required by the listing agreement. In fact, the Realtor's "efforts" were so minimal they are more supportive of Defendant's arguments for waiver, estoppel, release and cancellation than they are for a realtor's commission. This decision would be easier to support if the trial court's findings of fact and conclusions of law were otherwise. We are bound, however, by the findings of fact as there was some evidence to support them. Accordingly, I concur in result.