_____

No. 96-1443SD

_____

David Enos, general guardian          *
and parent of Jason Enos, a           *
minor,                                *
                                      *
            Appellant,                *
                                      *
     v.                               *
                                      *
Key Pharmaceuticals, Inc., a          *     Appeal from the United States
New Jersey corporation;               *     District Court for the District
Schering-Plough Corporation, a        *     of South Dakota.
New Jersey corporation;               *
Schering Corporation, a New           *
Jersey corporation; Pfizer,           *
Inc., doing business as Roerig        *
Division, a Delaware                  *
corporation,                          *
                                      *
            Appellees.                *

_____

Submitted:  November 18, 1996

Filed:  February 10, 1997

_____

Before FAGG, LAY, and HANSEN, Circuit Judges.

_____

FAGG, Circuit Judge.

     When he was three years old, Jason Enos was taking an asthma
medication called theophylline.  Jason suffered seizures and severe brain
damage.  In 1983, his mother Cheryl sued Jason's doctors for malpractice.
Jason's attorneys asked Dr. Miles Weinberger, a theophylline authority, for
his opinion on the cause of Jason's seizures.  Dr. Weinberger found fault
with Jason's doctors, but said the seizures probably were not caused by
theophylline.  The parties settled.  In exchange for $900,000, both Cheryl
and Jason's father David Enos signed a broadly worded release.  In 1995,
David

Enos brought this action on Jason's behalf against Key Pharmaceuticals, Inc., and Pfizer, Inc., producers of theophylline under the respective brand names Theo-Dur and Sustaire. David's claims include products liability, fraud, and misrepresentation. Key and Pfizer moved for summary judgment, asserting in defense the release David signed. The district court granted the motion, David appeals, and we affirm.

We review de novo the district court's grant of summary judgment, applying the same standards as did the district court. See PMX Indus., Inc. v. LEP Profit Int'l, 31 F.3d 701, 703 (8th Cir. 1994). South Dakota law controls this diversity case, and we review the district court's interpretation of that law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

The district court concluded the release Jason's parents executed was general and hence bars David's present claims. We agree. In South Dakota as elsewhere, a release is a contract. See Johnson v. Rapid City Softball Ass'n, 514 N.W.2d 693, 697 (S.D. 1994). In construing a contract, courts must give effect to the intent of the parties, which is found in the contract's language. See American State Bank v. Adkins, 458 N.W.2d 807, 809 (S.D. 1990). The instrument Cheryl and David signed released both Jason's doctors and

> all other persons, firms, corporations, or entities who are or might be liable, . . . from any and all actions, causes of action, claims, demands, damages . . . of every kind, character and description, including, but not limited to, such allegedly on account of, or in any way growing out of, . . . personal injuries and property damage . . . resulting, or to result, from the alleged negligence and malpractice of Defendants . . . or others.

David mistakenly construes the quoted language as releasing only claims resulting from negligence and malpractice, not the products liability and other claims David now asserts. The plain terms of the release contradict David's interpretation. The contract releases all entities from all claims of every kind, "including,

but not limited to" claims resulting from negligence and malpractice. David signed a general release. See Flynn v. Lockhart, 526 N.W.2d 743, 744-46 (S.D. 1995); Cleland v. United States, 874 F.2d 517, 519 (8th Cir. 1989).

Anticipating our conclusion, David contends that even if the release was general, South Dakota public policy forbids our enforcing it in Key's and Pfizer's favor. David cites South Dakota Codified Laws § 53-9-3 (Michie 1990), which provides:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another . . . are against the policy of the law.

The district court concluded § 53-9-3 applies only to the parties to a contract, not to nonparties like Key or Pfizer. In dicta, the Supreme Court of South Dakota has gone a little further than that, suggesting § 53-9-3 would apply against a nonparty who was a fiduciary of a party to a release. See Rosebud Sioux Tribe v. Strain, 432 N.W.2d 259, 263 & n.2 (S.D. 1988). But neither Key nor Pfizer was Jason's or David's fiduciary. Indeed, contrary to David's view, the public policy of South Dakota favors assertion of release by nonparties to the release contract. See Flynn, 526 N.W.2d at 745-46.

Finally, David argues Key and Pfizer should be equitably estopped from relying on the release because Dr. Weinberger concealed material facts from Jason's attorneys. See Century 21 Associated Realty v. Hoffman, 503 N.W.2d 861, 866 (S.D. 1993) (listing elements of equitable estoppel). For equitable estoppel to apply against Key and Pfizer, Jason must have been deceived by Key and Pfizer. See id. Thus, Dr. Weinberger's conduct is irrelevant unless in his dealings with Jason's attorneys, the doctor acted as Key's and Pfizer's agent. Although David contends Dr. Weinberger had a financial interest in Key, David has not asserted facts that, taken as true, would establish the doctor was Key's agent. See Southard v. Hansen, 376 N.W.2d 56, 58 (S.D. 1985)

(reciting elements of agency relationship).

We sympathize with Jason, but the law in this case is clear.  Jason's parents agreed to release all claims.  We thus affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.