1998 SD 92

**In The Matter of The ESTATE OF Walter O'KEEFE, Deceased.**

**Nos. 20350, 20361.**

Supreme Court of South Dakota.

Argued June 2, 1998.

Decided Aug. 12, 1998.

Richard D. Casey of Strange, Farrell, Johnson & Casey, Sioux Falls, for appellants Gail and Loren Lange.

Dennis Duncan and Jeff Cole of Zimmer, Duncan & Cole, Parker, for appellee Bernetta Woelz.

AMUNDSON, Justice.

[¶ 1.] Gail and Loren Lange (Langes) appeal the circuit court's decision holding that they were not entitled to any portion of the punitive damages received by an estate, and that Langes' share of the estate was to be offset by the costs and attorney fees incurred in Langes' litigation with the estate. We affirm in part and reverse in part.

### FACTS

[¶ 2.] Walter O'Keefe, the decedent in this case, died testate on November 12, 1992, at the age of 101 years old. O'Keefe was sur-

vived by two nephews, Gail and Loren Lange, and a niece, Bernetta Woelz, who each were entitled to inherit an equal share of O'Keefe's estate (Estate). Gary Ward was eventually appointed by the trial court to be the agent of Estate.

[¶ 3.] Ward filed a complaint on behalf of Estate to recover assets of Estate from Langes. The complaint alleged breach of fiduciary duty, conversion, fraud and deceit, and requested compensatory and punitive damages. In the course of that litigation, Langes were found as a matter of law to have been acting as fiduciaries in taking care of O'Keefe's property and finances, that they breached their fiduciary duty, and were guilty of conversion, fraud and deceit. A jury returned a verdict on the issue of damages in favor of Estate and against Langes in the amount of $75,000 in compensatory damages and $25,000 in punitive damages. Langes appealed and that judgment was affirmed by this Court in *Ward v. Lange,* 1996 SD 113, 553 N.W.2d 246.

[¶ 4.] Woelz, a sister of Langes, sought to prevent them from sharing in any of the judgment proceeds and interest from the foregoing litigation—one-third of which Langes would each otherwise inherit. Specifically, she filed a petition with the circuit court to disqualify Langes from taking any proceeds of Estate, or alternatively, for the court to assess the costs of administration to Langes. Woelz also sought to have Langes pay all of the attorney and agent fees, tax and costs incurred by Estate in obtaining the judgment against Langes.

[¶ 5.] The circuit court held a hearing on Woelz' petition on October 31, 1997. On November 21, 1997, the trial court entered findings of fact, conclusions of law, and an order assessing the costs of administration against Langes, and also prohibiting Langes from receiving any portion of Estate's punitive damage award against Langes.

[¶ 6.] Langes appeal, raising the following issues for review:

1. Whether the circuit court's decision that Langes are not entitled to any portion of Estate that includes a portion of the punitive damages awarded, plus interest, is clearly erroneous or an error of law.

2. Whether the circuit court's ruling that Langes must pay all attorney and agent fees, taxes, and costs that were incurred by Estate in obtaining a judgment against Langes is clearly erroneous or an error of law.

3. Whether the circuit court erred in ruling that Woelz is to receive the entire amount of the punitive damage portion of the judgment, plus interest thereon.

By notice of review, Woelz presents the following issue:

1. Whether the trial court's decision that Langes should not be totally disqualified from taking any portion of the assets of Estate is clearly erroneous or an error of law.

## STANDARD OF REVIEW

[¶ 7.] This Court reviews a trial court's findings of fact under the 'clearly erroneous' standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *Century 21 Associated Realty v. Hoffman,* 503 N.W.2d 861, 864 (S.D.1993) (citations omitted). "The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citations omitted). Questions of law are reviewed de novo. *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771. "This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court." *In re Estate of Jetter,* 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28.

## DECISION

[¶ 8.] **1. Whether the circuit court erred in disqualifying Langes from receiving any portion of the punitive damage proceeds.**

[¶ 9.] The circuit court disqualified Langes from receiving any portion of the punitive damage award that they paid to Estate in satisfaction of the judgment against them for breach of fiduciary duty, conver-

sion, fraud and deceit. The court's findings of fact noted "[t]hat it would be inequitable and against the public policy of the State of South Dakota for Gail Lange and Loren Lange to take any of the assets of the Estate which represents the punitive damage portion of the Judgment against the Langes in favor of the Estate." Langes contend this was error and that the court was without authority to make such an order. We do not agree.

[¶ 10.] The Uniform Probate Code (UPC) under Title 29A of our code now governs probate proceedings.[1] Langes assert that the legislature, in enacting the UPC, intended to foreclose the equitable power of courts. However, SDCL 29A–1–103 provides that "[u]nless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions."[2] See also SDCL 16–6–8 (providing that "[t]he circuit court possesses chancery as well as common-law jurisdiction."). Our cases have also long recognized the circuit courts' "unlimited equity jurisdiction in probate matters." Miller v. Thode, 372 N.W.2d 459, 462 (S.D.1985) (citing Spitzer v. Spitzer, 84 S.D. 147, 154, 168 N.W.2d 718, 722 (1969)). If the legislature had intended to foreclose the court's well-established equitable power to deal with fraud and other wrongdoing as Langes argue, it was within the legislature's province to do so. "A familiar principle of statutory construction, however, is that a statute should not be construed to impair pre-existing law in the absence of an explicit legislative statement to the contrary." In re Estate of Cotton, 104 Ohio App.3d 368, 662 N.E.2d 63, 64 (1995) (citing Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294, 1299 (1952)) (other citations omitted). There is no such pronouncement in the UPC that would deprive the circuit court of the power to fashion an equitable remedy in cases of established wrongdoing, such as the case at hand. See In re Will of Katz, 78 Misc.2d 790, 358 N.Y.S.2d 616 (N.Y.Sur.1974) (holding the court had "the equitable power to defeat the proponent's fraud by staying her hand and enjoining her from claiming under [the will].").

[¶ 11.] In Spitzer, this Court noted that fraud is one of the "exceptional circumstances" that would call for the circuit court to provide equitable relief in probate matters. 84 S.D. at 153, 168 N.W.2d at 721–22. One of the established principles of equity is "that an individual should not be allowed to profit through his or her own wrongdoing." Noble v. McNerney, 165 Mich.App. 586, 419 N.W.2d 424, 434 (1988) (holding that a probate court is empowered to effect an equitable remedy) (citation omitted). In this case, Langes were found to have breached a fiduciary duty, converted property, defrauded

1. Normally, the UPC applies to decedents dying on or after July 1, 1995. SDCL 29A–8–101(b)(1); see also Estate of Jetter, 1997 SD 125, ¶ 10 n.1, 570 N.W.2d 26, 28 n.1. Although the parties do not specifically explain why the UPC applies in this case in which the decedent died prior to July 1, 1995, it appears that SDCL 29A–8–101(b)(3) makes the UPC applicable to this case. It reads, in pertinent part, as follows: "This code applies to any proceedings in court commenced on or after July 1, 1995, regardless of the date of the decedent's death." SDCL 29A–8–101(b)(3).

2. The dissent argues that this opinion is simply judicial legislation, but disregards the legislative authority relied upon by the court to make an equitable determination under these unique facts. See SDCL 29A–1–103; SDCL 16–6–8; SDCL 29A–1–106. The dissent also contends that there is no statutory expression of public policy against the wrongful conduct that occurred in this case that would allow the court to deny Langes the right to inherit part of the punitive damage award. However, the UPC clearly attempts to implement a public policy that provides relief from the effects of fraud and evasion:

> If fraud has been perpetrated in connection with any proceeding or in any statement filed under this code ... any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not.... This section does not limit remedies relating to fraud perpetrated on a decedent during the decedent's lifetime which affect the succession of the decedent's estate.

SDCL 29A–1–106 (in pertinent part). The definition of "proceeding" under the UPC includes actions at law and suits in equity. SDCL 29A–1–201(37). Thus, "appropriate relief" in this case was to deny Langes any part of the punitive damage award that was designed to punish their wrongful conduct. The legislature has provided for the equitable resolution of disputes in the probate arena and all the trial court did in this case was carry out its equitable duties.

the estate, and as a result, were ordered to pay punitive damages. The circuit court's order that prohibited them from sharing in any part of the punitive damage award was an equitable remedy that carried out the expectation of the jury that awarded the punitive damages. As we have said before, the purpose of punitive damages is to punish the wrongdoer and deter others from similar wrongdoing. *Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D.1984). That objective would not be fully accomplished if Langes were allowed to receive back two-thirds of the punitive damage judgment against them by inheritance from an estate that was defrauded at their hands.

[¶ 12.] Langes rest much of their argument on their assertion that the legislature expressed a desire to give effect to the testator's intent, and that this intent would be thwarted if they were not allowed to inherit any part of the punitive damage award. This argument assumes that the testator intended to pass his property on to Langes in spite of their wrongdoing. However, O'Keefe was not aware of the fraud that was foisted upon him by Langes, nor of the conversion or breach of fiduciary duty at the time he made out his will. Furthermore, it seems specious for the perpetrators of fraud against a decedent to argue that the *decedent's* rights under the probate code will be violated unless the perpetrators receive their share under a will created by a decedent who was not aware of the wrongdoing that had been committed against him.

[¶ 13.] Langes try to assert that the exceptions to the general inheritance scheme are strictly construed by examining the employment of "slayer statutes"[3] and the disqualification from inheritance that they may provide. Langes contend that "[t]hese statutes are penal in nature ..." and "they are strictly construed." On the contrary, in South Dakota the "disqualification of [a] willful slayer shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own

wrong." *In re Estate of Gibbs*, 490 N.W.2d 504, 510 (S.D.1992) (quoting former SDCL 29-9-19) (alteration omitted). Langes cite *In re Emerson's Estate*, 191 Iowa 900, 183 N.W. 327 (1921), for the proposition that in the absence of a statute expressly prohibiting a particular slayer from inheriting or taking a devise or legacy from his victim, an exclusion could not be created or enlarged by judicial fiat on grounds of equity. However, this is not the law in South Dakota. This Court, in a case that was decided before the adoption of a slayer statute in South Dakota, proclaimed:

> We think that the principle of sound public policy which demands that a sane, felonious killer should not profit by his crime should be applied as often as and whenever any claim is made by such killer, whether under contract, will, or statute ... We cannot persuade ourselves that there was ever any legislative intent that our statutes of descent and succession, general or special, however broad and unambiguous and lacking in exceptions in their terms, should operate in favor of a sane, felonious killer. We announce it as the law of this state that such statutes will not be permitted so to operate unless and until the Legislature shall specifically and affirmatively so enact.

*De Zotell v. Mutual Life Ins. Co. of New York*, 60 S.D. 532, 548, 245 N.W. 58, 65 (1932).

[¶ 14.] In as much as *De Zotell* established the public policy of this state that willful slayers will be deprived of the fruits of their wrongdoing, we uphold the public policy of this state that perpetrators of fraud will be deprived of the fruit of their wrongdoing, as well.

[¶ 15.] **2. Whether Langes' distributive share of Estate should be offset and reduced by all of the agent and attorney fees involved in the collection of the assets of Estate because Langes' misconduct necessitated the expenditures.**

[¶ 16.] In addition to the damages that were recovered, the circuit court offset

---

**3.** These statutes generally prohibit a heir or devisee from benefitting from a decedent's estate in the event that the heir or devisee is guilty of "feloniously and intentionally" killing the decedent. See SDCL 29A-2-803(b).

Langes' share of Estate by the amount of litigation costs and attorney fees that Estate was forced to expend because of their fraud. Langes contest the power of the circuit court to do so.

[¶ 17.] "As a rule, attorney fees may only be awarded by contract or when explicitly authorized by statute." *Schuldies v. Millar*, 1996 SD 120, ¶ 37, 555 N.W.2d 90, 100 (citing *O'Connor v. King*, 479 N.W.2d 162, 166 (S.D. 1991); *First Bank of South Dakota v. Haberer Dairy & Farm Equip., Inc.*, 412 N.W.2d 866, 874 (S.D.1987); *Ofstad v. S.D. Dep't of Transp.*, 387 N.W.2d 539, 540 (S.D.1986)). "This Court has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power." *Id.* at ¶ 38, 555 N.W.2d 90 (citations omitted). *Cf.* SDCL 15–17–38.[4]

[¶ 18.] The authority of our courts to assess costs against the losing party is treated in much the same manner as the power to assess attorney fees:

> It is well settled in this state that the taxation of costs was unknown to the common law, and that courts are without the inherent power to tax costs. The authority to tax such costs should not be implied, but must rest upon a clear legislative grant of power to do so.

*Salem Sales, Inc. v. Brown*, 443 N.W.2d 14, 15 (S.D.1989) (citing *Lowe v. Steele Construction Co.*, 368 N.W.2d 610 (S.D.1985); *State Highway Comm'n v. Hayes Estate*, 82 S.D. 27, 140 N.W.2d 680 (1966)) (other citations omitted). In addition, the legislature has decided that "[t]he concept of costs as an indemnity to be recovered by a prevailing party is abolished in the courts of South Dakota." SDCL 15–17–36.

[¶ 19.] The circuit court's ruling attempts to indemnify Woelz for the attorney and agent fees incurred in *Ward v. Lange* even though she was not even a party to that action. Furthermore, if the court could not or, in its discretion, did not award attorney fees in *Ward*, how can it act to do so after that case has already run its course?

[¶ 20.] In addition to the court's equitable powers, Woelz cites SDCL 29A–3–720, which provides as follows:

> Any personal representative or person nominated as personal representative who defends or prosecutes any proceeding in good faith, whether successful or not, is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney's fees. The court may also award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an *action that resulted in a substantial benefit to the estate.* (Emphasis added.)

Woelz has not shown how the current action to prohibit Langes from sharing in the punitive damage award benefits the Estate. In fact, the current action is not for the benefit of the Estate, it is for Woelz' benefit. The other authority relied upon by Woelz to support an award of fees and costs are too general in the face of the requirement that there be specific authority to make such an award. *See Schuldies*, 1996 SD 120 at ¶ 38, 555 N.W.2d at 100 (holding statutes "insufficiently specific to allow attorney fees as damages[.]").

[¶ 21.] We find the remaining issues to be without merit.

[¶ 22.] Affirmed in part and reversed in part.

[¶ 23.] MILLER, C.J., KONENKAMP and GILBERTSON, JJ., concur.

[¶ 24.] SABERS, J., dissents.

---

4. This statute provides as follows:

> The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties. *However, attorneys' fees may be taxed as disbursements if allowed by specific statute.* The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, separate maintenance, support or alimony. *The court may award the fees before or after judgment or order.* The court may award attorneys' fees from trusts administered through the court as well as in probate and guardianship proceedings. Attorneys' fees may be taxed as disbursements on mortgage foreclosures either by action or by advertisement.
> SDCL 15–17–38 (emphasis added).

SABERS, Justice (dissenting).

[¶ 25.] I dissent as to Issue 1. Neither the majority opinion nor Woelz is able to muster a single case where *any court* has held that a person already punished once could be punished again under the *probate* code.[5] If the Legislature intended such a result, it would have so provided.

[¶ 26.] The majority opinion purports to rely on some heretofore unannounced "public policy." This reliance is misplaced in the absence of a statute. *See Stratmeyer v. Stratmeyer,* 1997 SD 97, ¶ 20, 567 N.W.2d 220, 224:

> [I]n this state the courts need only look to the statutes themselves to discern public policy. As noted in *Isaac v. State Farm Mutual Automobile Insurance Co.,* 522 N.W.2d 752, 756 n.1 (SD 1994), the Legislature is the final arbiter of public policy[.]

*See also Green v. Siegel, Barnett & Schutz,* 1996 SD 146, ¶¶ 31–32, 557 N.W.2d 396, 405 ("[S]uch arguments should be presented to the Legislature for its consideration as to what is the appropriate public policy for this State .... we sympathize with those who find the statute unjust, but we are bound to exercise judicial restraint ... and not substitute our judgment and wisdom for that of the legislature.") (citations omitted).

[¶ 27.] The majority opinion's reliance on SDCL 29A–1–106 is misplaced:

> If fraud has been perpetrated in connection with *any proceeding* or in *any statement filed under this code* or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud. This section does not limit rem-

edies relating to fraud perpetrated on a decedent during the decedent's lifetime which affect the succession of the decedent's estate.

(Emphasis added). As we noted in *Ward v. Lange,* 1996 SD 113, ¶ 23, 553 N.W.2d 246, 252, "[m]uch of the misfeasance took place before Gail or Loren could have inherited under the wills." The fraud for which Langes were already punished was not "perpetrated in connection with any proceeding or in any statement filed under this code or ... used to avoid or circumvent the provisions or purposes of this code" and therefore SDCL 29A–1–106 does not apply in this case.

[¶ 28.] The majority opinion cites *De Zotell v. Mutual Life Insurance Co. of New York,* 60 S.D. 532, 245 N.W. 58 (1932), where this court held, before the enactment of our "slayer" statute, that a killer could not profit from his crime. That case is clearly distinguishable. There, the court did not "establish" a public policy as asserted by the majority opinion in ¶ 14; the court stated that the public policy preventing a killer from taking under the decedent's life insurance policy was found in RC 1919 § 49: "No one can take advantage of his own wrong." *De Zotell,* 60 S.D. at 534, 245 N.W. at 59. Additionally, the court noted, "when the profit is to accrue by virtue of a contract, as upon an insurance policy, no legal difficulty is encountered which prevents barring the wrongdoer from recovery." *Id.* at 545, 245 N.W. at 64. Section 49 was omitted in the revised SDC 1939. Today the only analogous provision is found in the "slayer" statute. *See* SDCL 29A–2–803(f):

> A wrongful acquisition of property or interest by a killer not covered by this section must be treated in accordance with the principle that a killer cannot profit from the killer's wrong.

[¶ 29.] Langes committed many wrongs but they did *not* kill anyone. Their wrongs resulted in a judgment. They paid the judgment. The Estate accepted it. They have been punished. Therefore, this matter was over and done with—it was already res judi-

---

5. The lone exception is provided in SDCL 29A–2–803(b), our "slayer" statute, which causes an individual "who feloniously and intentionally kills the decedent" to forfeit all benefits with respect to the decedent's estate.

cata—and the trial court erred by reactivating it. There is no authority to punish them again. The majority opinion is simply judicial legislation at its worst.[6]

[¶ 30.] The majority opinion attempts to characterize the punitive damages as "fruit of [Langes'] wrongdoing." *See supra* ¶ 14. This is an inaccurate characterization; here, the "fruit of their wrongdoing" amounted to $75,000, which Langes paid back. The majority opinion relies upon *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969), for the proposition that "fraud is one of the 'exceptional circumstances' that would call for the circuit court to provide equitable relief in probate matters." *See supra* ¶ 11. *Spitzer* does not support the trial court's action in this case.[7] "Fraud suffices as a ground for annulling a will *only* where it affected the testator at the moment the will was executed[.]" 79 Am.Jur.2d *Wills* § 412, at 565 (1975) (emphasis added); *see* SDCL 29A–3–407[8] (will contests limited to questions of testamentary capacity, construction or validity of the will itself, and circumstances surrounding the execution thereof); *see also In re Estate of Lien*, 270 Mont. 295, 892 P.2d 530, 532 (1995) (holding that petitioners must show a statutory basis for a will contest and are limited to the statutory grounds listed in its identical statute).

[¶ 31.] In *Ward*, 1996 SD at ¶ 23, 553 N.W.2d at 252, Langes argued the trial court erred in excluding evidence of O'Keefe's will; they claimed they should have been allowed to argue to the jury that stealing from O'Keefe amounted to stealing from themselves since they were beneficiaries. We concluded that the trial court did not abuse its discretion by excluding the will:

The trial court reasoned that while a portion of the damage award may eventually go to Gail and Loren, it was not relevant to the amount of Estate damages. The only issue for the jury was the loss the Estate suffered, if any, due to Gail's and Loren's actions.

[¶ 32.] Likewise, the only real issue here is whether the Estate was fully compensated for the loss it suffered and it is undisputed that Langes satisfied the judgment. The majority opinion states that Woelz brought this action, not on behalf of the Estate, but for her own benefit. *See supra* ¶ 20. Since the judgment was satisfied, she is not deprived of any intended bequest—in fact, her interest increased by one-third of the punitive damages award. *Cf.* 80 Am.Jur.2d *Wills* § 892, at 79 (1975):

The mere circumstance that a person may be interested in the administration, distribution, or partition of an estate is not sufficient [to support a will contest] if he will not suffer any detriment from the will. A grievance to the feelings or sense of justice, or a sentimental interest not coupled with a pecuniary interest, is not a sufficient interest to support a will contest.

[¶ 33.] We should reverse the trial court's judgment in its entirety.

---

6. Where will it end? Consider for a moment all of the opportunities the majority opinion creates for trial judges to attempt to rectify or punish a perceived wrong. For example, under the guise of its probate authority and jurisdiction, a trial court can attempt to rectify or punish the same wrong twice. Note that here, the same circuit court judge presided over Ward v. Lange and this case.

7. In fact, the court found no fraud in *Spitzer*. The *Spitzer* court cited *Welsh v. Krause*, 38 S.D. 264, 161 N.W. 189 (1917), for the statement that equitable relief is available in probate matters. In *Welsh*, the only issue was whether the county courts had exclusive original jurisdiction over probate matters or concurrent jurisdiction with the circuit courts' equity jurisdiction. The court held that in the absence of fraud, waste, or great lapse of time since the death of the decedent, the county court could proceed with the probate of a will. Obviously, these cases do not support the majority opinion.

8. SDCL 29A–3–407 provides in part:

Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation.