2005 SD 70

Michael **FRISKE**, Jon **Friske**, Joel **Friske**, Lori **Sikkink**, Lisa **Brandt**, Mary L. **Mack**, and Michelle **Sutton**, **Plaintiffs and Appellees**,

v.

Timothy T. **HOGAN**, **Defendant and Appellant**.

Nos. 23486, 23491.

Supreme Court of South Dakota.

Argued May 24, 2005.

Decided June 8, 2005.

Rehearing Denied June 29, 2005.

Lee Schoenbeck of Schoenbeck Law Office Watertown, South Dakota, Attorney for plaintiffs and appellees.

Gary J. Pashby, Christopher W. Madsen of Boyce, Greenfield, Pashby & Welk Sioux Falls, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice.

[¶ 1.] As the intended beneficiaries under their father's will, the children of Doug Friske (Friske children) brought an action against attorney Timothy Hogan (Hogan) alleging that he committed malpractice by failing to assure that the property identified in their father's will was titled in a way to give effect to the proposed disposition of that property. The circuit court granted partial summary judgment in favor of the Friske children. We affirm.

### Facts

[¶ 2.] Doug and Jeanne Friske each had children from prior marriages. In 2002, they hired Hogan to draft their wills and power of attorney documents. Hogan drafted separate wills for each of them.

[¶ 3.] Doug's will devised certain real and personal property to his children, subject to a life estate for his wife, Jeanne. Specifically, four parcels of real property located in Hamlin County, South Dakota, and the farm equipment were devised in equal shares to the Friske children, subject to Jeanne's life estate.[1] Doug also appointed Jeanne as the personal representative of his estate. Doug reviewed, approved and executed the will, on or about February 15, 2002.

[¶ 4.] Doug died on March 23, 2003. The Friske children learned that two of the parcels of real property were held in joint tenancy between Doug and Jeanne.[2]

---

1. Doug's will provides in part:

   I give and devise the following real property and all farm machinery I have a[n] interest in at the time of my death to my children, MICHAEL FRISKE, LORI SIKKINK, LISA BRANDT, MARY L. MACK, MICHELLE SUTTON, JON FRISKE, JOEL FRISKE and JORDAN FRISKE, share and share alike, subject, however, to a life estate in and to all the below named described real property which I hereby give and devise to my wife, JEANNE M. FRISKE, if she survives me, in all farm machinery I may own at the time of my death and in the following real estate property:
   The Northwest [Quarter (NW1/4)] of Section Eighteen (18), Township One Hundred Fifteen (115) North in Range Fifty–One (51) West of the Fifth P.M., Hamlin County, South Dakota
   The Southwest [Quarter (SW1/4)] of Section Seven (7), Township One Hundred Fifteen (115) North in Range Fifty–One (51) West of the Fifth P.M., Hamlin County, South Dakota
   The South Half (S1/2) of the Southwest Quarter (SW1/4) of Section Twenty–Five (25), Township One Hundred Fifteen (115) North in Range Fifty–Two (52) West of the Fifth P.M., Hamlin County, South Dakota
   The East One Hundred Acres (E100) of the North One–Half (N1/2) of Section Thirty One (31), Township One Hundred Fifteen (115) North in Range Fifty–Two (52) West of the Fifth P.M., Hamlin County, South Dakota.
   It is noted that Jordan Friske is not a party plaintiff to this action.

2. In 1989, Doug and Jeanne executed a warranty deed creating a joint tenancy with right of survivorship in the following property:

   The Southwest Quarter (SW1/4) of Section Seven (7), and the Northwest Quarter (NW1/4) of Section Eighteen (18), all in Township One Hundred Fifteen (115)

Those parcels passed to Jeanne upon Doug's death by operation of law and the provisions of Doug's will regarding those parcels were of no effect.

[¶ 5.] The Friske children, as intended beneficiaries under their father's will, brought suit against Hogan claiming that he committed malpractice by failing to assure that the property identified in Doug's will was titled in a way to give effect to the proposed disposition of that property. They are seeking damages in the amount of the residual estate.

[¶ 6.] Hogan moved for summary judgment claiming that the strict privity rule prevents the Friske children from maintaining a malpractice action against him in the absence of an attorney-client relationship. The Friske children moved for partial summary judgment claiming that a third party exception to the strict privity rule exists and, if the requirements of the exception can be met, they may maintain the malpractice action against Hogan.

[¶ 7.] The Honorable Robert A. Miller, Retired Justice, acting by appointment as Circuit Court Judge, granted the Friske children's motion. Hogan challenges the circuit court order via an intermediate appeal that nonclient beneficiaries under a will can maintain a malpractice action against the attorney who drafted the will and that the exception should be applied both prospectively and retroactively.

### Standard of Review

[¶ 8.] "Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Luther v. City of Winner*, 2004 SD 1, ¶ 6, 674 N.W.2d 339, 343 (citing SDCL 15–6–56(c)). "Questions of law are reviewed de novo." *In re Estate of Martin*, 2001 SD 123, ¶ 15, 635 N.W.2d 473, 476 (quoting *Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139).

[¶ 9.] **Whether nonclient beneficiaries under a will can maintain a malpractice action against the attorney who drafted the will and, if so, should the exception be applied both prospectively and retroactively.**

A. *Whether nonclient beneficiaries can maintain a malpractice action against the attorney who drafted the will*

[¶ 10.] Generally, in order to maintain a malpractice action against a lawyer, "a plaintiff must first show that an attorney-client relationship existed between the lawyer and the plaintiff." *Chem–Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 30, 652 N.W.2d 756, 769 (citing *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852). This is commonly referred to as the "strict privity rule." *Id.*

[¶ 11.] The rationale behind maintaining the strict privity rule is as follows:

First, the rule preserves an attorney's duty of loyalty to and effective advocacy for the client. Second, adding responsibilities to nonclients creates the danger of conflicting duties. Third, once the privity rule is relaxed, the number of persons a lawyer might be accountable to could be limitless. Fourth, a relaxation of the strict privity rule would imperil attorney-client confidentiality.

*Id.* ¶ 31 (internal citations omitted). Hogan argues these public policy considerations require that the strict privity rule be preserved and this Court should decline to adopt a nonclient beneficiary exception.

North, Range Fifty–One (51) West of the Fifth P.M.

[¶ 12.] We have previously noted that other jurisdictions have recognized an exception to the strict privity rule, "particularly in contract actions, but its scope sometimes extends to the area of will drafting and estate planning." *Id.* ¶ 30 (citing Joan Teshima, Annotation, *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R.4th 615 (1988)). The Restatement (Third) of the Law Governing Lawyers provides that a lawyer may owe a duty of care to nonclients when and to the extent that:

(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

(b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and

(c) the absence of such a duty would make enforcement of those obligations to the client unlikely.

Restatement (Third) of the Law Governing Lawyers, § 51(3) (2004).[3]

▬▬▬ [¶ 13.] We have noted that an incidental benefit to a nonclient is not sufficient to invoke an exception to the strict privity rule. *Chem–Age Industries, Inc.,* 2002 SD 122, ¶ 34, 652 N.W.2d at 771. To establish a duty owed by an attorney to a nonclient, the nonclient "must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Id.* (quoting *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618, 625 (1985)). Therefore, "the test for third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party." *Id.* (quoting *Flaherty,* 492 A.2d at 625).

[¶ 14.] In *Schreiner v. Scoville,* the Supreme Court of Iowa allowed for a limited exception to the strict privity rule noting that "[t]his trend is particularly evident in cases involving claims against lawyers accused of preparing testamentary instruments that are invalid or in some other way frustrate the stated testamentary intent of the deceased." 410 N.W.2d 679, 681 (Iowa 1987). The Iowa court ultimately concluded that "a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator's testamentary instruments." *Id.* at 682.

[¶ 15.] Here, the Friske children are identifiable beneficiaries under Doug's will and one of the primary objectives of Hogan's representation was to benefit them. Under these circumstances, Hogan owed a duty of care to the Friske children. This duty of care did not significantly impair or compromise Hogan's ability to perform the obligations that he owed to his client, Doug. In fact, the duty that Hogan owed

---

**3.** In the comments to § 51(3), it is further explained that:

> When a lawyer knows [] that a client intends a lawyer's services to benefit a third person who is not a client, allowing the nonclient to recover from the lawyer for negligence in performing those services may promote the lawyer's loyal and effective pursuit of the client's objectives. The nonclient, moreover, may be the only person likely to enforce the lawyer's duty to the client, for example because the client has died.

> A nonclient's claim under Subsection (3) is recognized only when doing so will both implement the client's intent and serve to fulfill the lawyer's obligations to the client without impairing performance of those obligations in the circumstances of the representation. *A duty to a third person hence exists only when the client intends to benefit the third person as one of the primary objectives of the representation [].*

*Id.* cmt. f (emphasis added).

to Doug and his children is, at least in part, the same. That is, for purposes of our review of a summary judgment, Hogan may owe them a duty to ensure that the testamentary documents he drafted would devise the identified property in accordance with Doug's wishes.

[¶ 16.] Although we are not prepared at this point to adopt Restatement (Third) of the Law Governing Lawyers, § 51(3) because it goes beyond the facts of this case, we approve the more limited holding from the *Schreiner* case and adopt this exception to the strict privity rule.

[¶ 17.] In summary, Hogan knew that Doug intended as the primary objective that the services benefit the nonclients, such a duty would not significantly impair Hogan's performance of his obligations to Doug, and the absence of such a duty would make enforcement of those obligations unlikely.[4] Under this exception to the strict privity rule, nonclient beneficiaries, such as the Friske children, may maintain a malpractice action against the attorney who drafted the testamentary instrument.

*B. Whether the exception should be applied both prospectively and retroactively*

[¶ 18.] Hogan argues that the decision should only be applied prospectively. Hogan asserts that this is necessary in order to provide notice to all attorneys of their "expanded scope of duty."

[¶ 19.] "[T]he Court 'has inherent power to apply its decisions prospectively or retrospectively.'" *Burgard v. Benedictine Living Communities*, 2004 SD 58, ¶ 9, 680 N.W.2d 296, 299 (quoting *State*

*v. One 1966 Pontiac Auto.*, 270 N.W.2d 362, 365 (S.D.1978)). "Traditionally, the general rule in civil cases is that unless a court declared that its decision was to have only prospective effect, the decision would have both prospective and retroactive effect." *Id.* This "arises from the theory that the judiciary does not make law, but rather interprets it." *Id.*

[¶ 20.] We have held that:

We have adopted the factors promulgated by the United States Supreme Court for determining whether a decision will have only prospective application. Those factors are:

First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied *or by deciding an issue of first impression whose resolution was not clearly foreshadowed.* Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship" by a holding of nonretroactivity.

*Id.* ¶ 10 (citing *Brown v. John Morrell & Co.*, 511 N.W.2d 277, 278 (S.D.1994)) (emphasis in the original).

[¶ 21.] This is not a new principle of law in that it was "clearly foreshadowed"

---

4. We recognize that the personal representative of an estate could bring an action for the estate against the attorney for malpractice. However, in this instance, it would be cumbersome as the personal representative of the estate is Jeanne, who is the surviving joint tenant of the property.

in *Chem–Age Industries. Chem–Age Industries* sets forth the body of law, notes that its scope "sometimes extends to the area of will drafting and estate planning" and concludes that the principle was not adopted in that case because the "plaintiffs have brought forth insufficient evidence to invoke it here." *Chem–Age Industries,* 2002 SD 122, ¶¶ 30, 35, 652 N.W.2d at 769–71. Based on this, the trial court noted in its Order that this Court has indicated a "willingness to consider the existence of a third party exception to the strict privity rule."

[¶ 22.] As to the second consideration stated above, Hogan argues that only prospective application is warranted because "from the Court's ruling forward attorneys would be advised of their expanded scope of duty, in contrast to Hogan who did not have any notice that the Court would recognize such an exception." However, there is no substantial discussion in the brief weighing the merits and demerits with respect to the prior history of the rule to limit it to prospective only and we decline to do so.

[¶ 23.] The final consideration involves weighing "the inequity imposed by retroactive application" and also favors applying both prospective and retroactive as the general rule. Refusal to apply the decision retroactively would deny them the inheritance intended by their father. However, the burden created by retroactive application of the rule is the same or similar burden Hogan bore when he agreed to provide legal services to Doug.

[¶ 24.] Based on the above, we recognize an exception to the strict privity rule and the Friske children may pursue a malpractice action against Hogan in an attempt to recover damages to the extent that their remainder interest was diminished due to the negligence, if any, of Hogan.

[¶ 25.] We affirm.

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.